UNITED STATES of America, Appellee,

v.

Olusegun ALAGA, Defendant–Appellant.

No. 915, Docket 92–1548.

United States Court of Appeals,
Second Circuit.

Argued Feb. 4, 1993.

Decided June 14, 1993.

Steve Zissou, Flushing, NY (Randall Unger, of counsel), for defendant-appellant.

Joseph R. Conway, Asst. U.S. Atty., E.D.N.Y. Brooklyn, NY (Mary Jo White, U.S. Atty., E.D.N.Y. Brooklyn, NY, and Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before: MESKILL, Chief Judge, FEINBERG and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Olusegun Alaga appeals from his conviction for narcotics trafficking by a jury and from a sentence imposed by Judge Wexler. We hold that Alaga is not entitled to an adjustment of his base offense level because the quantity negotiated in a "reverse buy" may have been beyond his means. We therefore affirm.

## BACKGROUND

The following evidence was presented to the jury. While Alaga was serving a prison term for an unrelated offense, he befriended Amir Serpoosh, a prisoner who had assisted the government in other cases and was awaiting sentence for heroin possession and distribution. Alaga mentioned the severe cash problems threatening his failing printing business. He then asked Serpoosh for access to a heroin supplier in the New York area in the hopes of raising money for this printing business. Serpoosh responded that he could provide a contact with access to heroin, and negotiations for the purchase of one and one-quarter kilograms of heroin commenced. Alaga assured Serpoosh that his friend Lekan Yusuf, the manager of the printing business, could broker the deal. Serpoosh then gave Alaga a beeper number which, unbeknownst to Alaga, belonged to undercover Drug Enforcement Agency Special Agent Derek Maltz.

Shortly thereafter, Alaga told Serpoosh that he had given the beeper number to Yusuf. Yusuf dialed the number and was instructed to, and then did, contact Mike Yanniello, another undercover Special Agent. During their first telephone conversation and many later ones, Yanniello and Yusuf discussed the purchase of one and one-quarter kilograms of heroin for $75,000.

Based on telephone records, Alaga was in almost continual contact with Yusuf and another coconspirator, Akintunde Oke, throughout these negotiations. Alaga regularly informed Serpoosh of the status of the planned heroin transaction. Alaga also told Serpoosh that Yusuf would bring another person, Oke, to a May 18, 1990 meeting with Yanniello and that this other person would distribute the heroin to out-of-town buyers.

During the course of several months of telephone negotiations between Yusuf, Oke, and Yanniello, the quantity of heroin and the price remained constant at one and one-quarter kilograms and $75,000, respectively. The terms of payment, however, changed several times because Alaga and his coconspirators had difficulty raising the $75,000 needed to pay Yanniello for the heroin. Finally, the parties agreed that the heroin would be purchased with a promissory note in the amount of $75,000. This note was secured by Alaga's printing business and was to be paid in full within one week of its execution. A lawyer prepared the promissory note, leaving certain terms blank.

On June 7, 1990, Yusuf and Yanniello met for the exchange. Oke was unable to attend the meeting at the last minute because his wife was delivering their baby. Yusuf presented the promissory note, and Yanniello completed the blank portions. Yusuf then received a package which he believed to contain one and one-quarter kilograms of heroin, but which was actually a package of flour or starch prepared to resemble heroin. Arrests followed.

At trial, Alaga presented no evidence. The jury convicted Alaga, Yusuf, and Oke of conspiring to possess heroin with the intent

to distribute it in violation of 21 U.S.C. § 846 (1988). At Alaga's sentencing, his lawyer stated the following:

> Your Honor should consider a downward reduction ... inasmuch as the finding that the offense level was based on 32, due to a kilo-and-a-quarter of [heroin] is inappropriate and is just served to puff the offense level up.
>
> [Alaga] has asked me to ask you to take into consideration the fact that Mr. Serpoosh was never in a position to be able to deliver that amount of heroin, nor was [Alaga] or any of his co-defendants in a position to be able to purchase that amount. He has asked me to ask you to take that into consideration firstly....

The court thereafter characterized this statement as a request for a "downward departure, not within the guidelines" and computed Alaga's sentence based upon a base offense level of thirty-two, the level appropriate for a drug transaction involving one and one-quarter kilograms of heroin. U.S.S.G. §§ 2D1.1, 2D1.4. The court sentenced Alaga to an imprisonment term of 135 months, three years supervised release, and a $50 assessment.

### DISCUSSION

■ On appeal, Alaga contends that: (1) the evidence was legally insufficient to support a conviction, (2) testimony regarding his current incarceration was unduly prejudicial, and (3) his sentence should have been reduced. The very statement of the evidence disposes of Alaga's wholly meritless sufficiency claim. He initiated the transaction in question and participated throughout. Admission of the evidence of his incarceration was necessary to explain the nature of his role and was not error. *United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992).

With regard to his sentence, Alaga argues first that the court should have exercised its discretion to depart downward. However, a sentencing court's refusal "to depart from the applicable Guidelines range is not appealable." *United States v. Colon,* 884 F.2d 1550, 1552 (2d Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989).

■ Alaga's second argument regarding his sentence deserves more consideration. His counsel asserted to the district court that he and "his co-defendants [were not] in a position to be able to purchase that amount." Although framed as a request for a discretionary downward departure, this assertion actually disputed the quantity of drugs used in calculating the offense level by asserting that he and his codefendants were not capable of purchasing one and one-quarter kilograms. The issue raised by Alaga, although inartfully stated in the district court, is whether the one and one-quarter kilogram amount should be adjusted downward if Alaga can show that he lacked the means to come up with the purchase price. We believe the issue was preserved for appeal. We also believe that it is fairly presented on this record. Although the transaction here was completed in the sense that the negotiated exchange was made, albeit of a nonnarcotic substance, the transaction was made possible only by an extension of credit by government undercover agents, who may well have been willing to accept a consideration less than the wholesale market value of one and one-quarter kilograms. Alaga thus explicitly argues that he could not raise $75,000 in cash and implies that the promissory note was worth less than $75,000. He concludes that his inability to give full value for the one and one-quarter kilograms of heroin vitiates his responsibility for that quantity for Guidelines purposes. If he is right, we would have to remand for a determination of the value of the note. However, we believe his view of the law is incorrect.

U.S.S.G. § 2D1.4 Application Note 1 states in pertinent part: [1]

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall ex-

---

1. The substance of the passage quoted is now in U.S.S.G. § 2D1.1 Application Note 12.

clude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

█ We have held that the first quoted sentence applies to "reverse buys" where the undercover agents are selling the narcotics, as in the case here, and that the negotiated quantity determines the amount to be used in calculating the base offense level. *United States v. Adames*, 901 F.2d 11 (2d Cir.1990). The language of the Application Note clearly indicates that the negotiated quantity is conclusive except where the defendant was the putative seller and neither intended nor was able to produce that amount. We perceive no reason to go beyond the plain language of the Note and to allow a putative buyer like Alaga to contest his ability to pay the sale price for the negotiated quantity. Where a seller neither intends nor is able to produce the negotiated quantity of narcotics, the Guidelines simply recognize that the crime could not have been committed as planned. Where the defendant is a buyer, however, and negotiates for a particular quantity, he or she fully intends to commit the crime as planned. For example, in the instant matter, Alaga's associates, Yusuf and Oke, believed that they could sell the heroin within a week and pay off the promissory note.

Affirmed.