**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Philip Scott OKEY, Defendant–Appellant.**

No. 94–2588.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 24, 1995.*

Decided Feb. 8, 1995.

---

* Although oral argument was originally scheduled in this case, the appellant, with no objection from the government, moved to waive oral argu-

ment. The court granted this motion, and the appeal is submitted on the briefs and the record.

Mark D. Stuaan, Asst. U.S. Atty. (submitted), Indianapolis, IN, for plaintiff-appellee.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Philip Scott Okey pled guilty to one count of Possession of Plates for Counterfeiting, a violation of 18 U.S.C. § 474. Okey had an offense level of 15 and a criminal history category of II, resulting in a sentencing range of 21–27 months. The district court imposed a sentence of 21 months of imprisonment and three years of supervised release. On appeal, Okey argues that the district court incorrectly computed his offense level.

## I. Facts

On November 24, 1993, the Secret Service began an investigation based on a tip from an informant that Okey was planning to produce $900,000 in counterfeit money. Special Agent Deal, working undercover, made contact with Okey, earned his confidence, and promised to help further his plan. On January 10, 1994, Okey produced $30,000 in counterfeit bills, which he and Deal then destroyed. On January 11, Okey, accompanied by Deal, procured sufficient quantities of paper to print $2 million in counterfeit currency. After obtaining the paper, Deal was present while Okey worked on the negatives and the plates, which he planned to use "to start printing the backs of ... [counterfeit bills] the following day." Love Affidavit at 12. On January 12, a criminal complaint was filed against Okey and a warrant issued. On January 14, Okey was arrested, and agents seized his printing equipment along with $422,000 in counterfeit bills that he had produced between January 10 and 14.

At sentencing, the district court held that Okey's relevant conduct, *see* U.S.S.G. § 1B1.3, included producing $422,000 in counterfeit currency.[1] Thus, he received a nine-level enhancement under § 2F1.1(b)(1)(J) of the Sentencing Guidelines. He argues that by arresting him on January 14 rather than on January 10 the government improperly extended the investigation. He claims that he should have been arrested on January 10 after the first batch of counterfeit bills was produced. Had he been arrested on January 10, his relevant conduct would have included producing $30,000 in counterfeit money, which would have resulted in an enhancement of four levels under § 2F1.1(b)(1)(E), rather than nine levels under § 2F1.1(b)(1)(J). The four-day delay in making the arrest, Okey contends,

---

1. The district court did not include the $30,000 produced and destroyed on January 10 as relevant conduct. The money was not included because it had been destroyed. *See* III Tr. at 46–47.

served no purpose except to enhance his offense level and thus was improper government conduct.

## II. Discussion

■ Although Okey appears reluctant to characterize it as such, his claim is essentially one of sentencing factor manipulation, or sentencing manipulation. Sentencing manipulation occurs when the government engages in improper conduct that has the effect of increasing a defendant's sentence. Some courts link sentencing manipulation to outrageous government conduct, holding that a manipulation claim arises when "outrageous government conduct that offends due process could justify a reduced sentence." *United States v. Jones,* 18 F.3d 1145, 1153 (4th Cir. 1994).[2] Other courts, however, have hinted that sentencing manipulation may arise from conduct that does not rise to the level of offending due process. *See United States v. Connell,* 960 F.2d 191, 194 (1st Cir.1992) (the sentencing manipulation defense "requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense ... or [a] due process claim ... must sometimes be filtered out of the sentencing calculus"). Okey does not allege that the government engaged in outrageous conduct; thus

his claim most resembles sentencing manipulation as defined in *Connell.*[3]

This Court has questioned the validity of *Connell*-style sentencing manipulation arguments. In *United States v. Cotts,* 14 F.3d 300, 306 n. 2 (7th Cir.1994), we observed that

"If we are willing to accept the assumption apparently approved by Congress that [for example] dealing in greater quantities of drugs is a greater evil, it is not clear to us what the precise legal objection to governmental behavior based on cognizance of relative penal consequences in this area could be (so long as it does not rise to the level of true entrapment or [outrageous government] conduct)."[4]

■ Regardless whether sentencing manipulation claims are ever viable in this Circuit, Okey fails to demonstrate that the government improperly prolonged its investigation in order to increase his sentence. The criminal complaint against Okey was issued on January 12, which was two days after the initial $30,000 was produced and the day after Okey procured the paper to manufacture up to $2 million dollars. Thus the charges were brought virtually as soon as the government was sure that Okey would indeed carry out his plan. The fact that the arrest took place on January 14 is of little significance; two days is not an unreasonably

---

**2.** The "outrageous government conduct" defense arises from dicta in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), where the Supreme Court stated that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43. In *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), a three-Justice plurality stated that no such defense exists, and this court, while not explicitly rejecting the outrageous government conduct defense, has questioned its continuing vitality. *See United States v. Nava–Salazar,* 30 F.3d 788, 800 (7th Cir.1994), *cert. denied, Casas v. United States,* — U.S. —, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994); *United States v. Van Engel,* 15 F.3d 623, 631–32 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). At least one circuit has stated that the outrageous government conduct defense is invalid, as has one judge of this Court. *United States v. Tucker,* 28 F.3d 1420 (6th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1426,

131 L.Ed.2d 308 (1995); *United States v. Miller,* 891 F.2d 1265, 1271–73 (7th Cir.1989) (Easterbrook, J., concurring).

**3.** Sentencing manipulation is different from sentencing entrapment, which occurs when the government improperly causes a defendant initially predisposed to commit a lesser crime (e.g., sell a smaller quantity of drugs or produce less counterfeit money) to commit a more serious offense. *Jones,* 18 F.3d at 1153.

**4.** Other courts are split on whether to recognize sentencing manipulation claims. The Fourth Circuit shares our skepticism, *see Jones,* 18 F.3d at 1154, and the Eleventh Circuit has rejected sentencing manipulation as a viable theory. *See United States v. Williams,* 954 F.2d 668, 673 (11th Cir.1992). Several courts, however, will entertain manipulation claims. *See United States v. Brewster,* 1 F.3d 51, 55 (1st Cir.1993); *United States v. Calva,* 979 F.2d 119, 122–23 (8th Cir. 1992); *United States v. Shepherd,* 857 F.Supp. 105, 110 (D.D.C.1994); *United States v. Monocchi,* 836 F.Supp. 79, 87–88 (D.Conn.1993).

long delay between the filing of a complaint and its execution. Okey, we should note, did not plan any crimes of violence. Therefore the government possessed no overwhelming need to arrest him immediately.

Okey argues that the intent or at least the inevitable and prejudicial effect of the delay was a greater sentence than would have resulted from a timely arrest. There is not enough evidence in the record, however, to convince us that the agents knew Okey would produce such large quantities of counterfeit money in a matter of two or three days. Nor was the government's conduct objectively unreasonable. We agree with the district court that the courts should not impose an obligation on law enforcement agents to "save the defendant from himself" by arresting him before he has time to complete his planned criminal conduct. *See* III Tr. at 46.[5]

### III. Conclusion

Even if sentencing manipulation claims are viable in this Circuit, we conclude that the government did not improperly prolong its investigation of Okey in order to obtain an increased sentence. The decision of the district court is

AFFIRMED.

---

**5.** Okey also argues that we should reverse his sentence because, when the government does not arrest suspects immediately, disparities in sentencing are created. He seems to be arguing that allowing the government to determine when an arrest takes place violates the intent of the Guidelines to reduce disparity, because a defendant's sentence can depend, in large part, on how much of the planned criminal conduct had occurred before the arrest took place. Thus the actual conduct completed may inadequately reflect the defendant's culpability, for minor criminals arrested later and more dangerous criminals arrested earlier may receive similar sentences. Okey, however, fails to state a legal basis for this claim, and the courts have rejected similar challenges to the Guidelines based on due process,

see *United States v. Bigelow*, 914 F.2d 966, 972–73 (7th Cir.1990), *cert. denied, Vaughan v. United States*, 498 U.S. 1121, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991), and separation of powers. *See United States v. Clark*, 989 F.2d 447, 449 (11th Cir.1993); *United States v. Richardson*, 925 F.2d 112, 117 (5th Cir.1991), *cert. denied, Boudreaux v. United States*, 501 U.S. 1237, 111 S.Ct. 2868, 115 L.Ed.2d 1034 (1991). Moreover, Okey did not raise this argument before the district court, so that it is forfeited, *United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993), since it does not rise to the level of plain error. *See United States v. Wallace*, 32 F.3d 1171, 1174 (7th Cir.1994).