UNITED STATES of America, Appellee,

v.

**Hannelore KNECHT, Defendant–Appellant.**

**No. 1107, Docket 94–1481.**

United States Court of Appeals,
Second Circuit.

Argued March 21, 1995.

Decided May 5, 1995.

Margery B. Feinzig, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Nancy J. Northup, Asst. U.S. Atty., New York City, on the brief), for appellee.

Marjorie M. Smith, New York City (The Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York City, on the brief), for defendant-appellant.

Before: OAKES, KEARSE, and LEVAL, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Hannelore Knecht appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York following her plea of guilty before Michael B. Mukasey, *Judge*, to one count of attempted money laundering in violation of 18 U.S.C. § 1956(a)(3)(B) (1988 & Supp. V 1993). Knecht was sentenced principally to 51 months' imprisonment, based in part on an enhancement under § 2S1.1(b)(1) of the applicable federal Sentencing Guidelines ("1993 Guidelines") on the ground that she believed that the money she was attempting to launder was derived from drug transactions. On appeal, Knecht challenges

her sentence, arguing that this enhancement was improper because she was caught in a "sting" operation and the only reason for her belief that the money was drug money was a gratuitous statement to that effect by the undercover agent with whom she was dealing. For the reasons that follow, we reject her challenge and affirm the judgment.

## I. BACKGROUND

The principal facts are not disputed. In December 1993, an informant of the Federal Bureau of Investigation ("FBI") put an undercover FBI agent in contact with Knecht. The undercover agent and Knecht met to discuss the agent's purported desire to have money laundered. The agent said he was interested in laundering between $5 million and $7 million a month but that he wanted to conduct a test transaction involving $1 million first. Knecht agreed to launder the money through individuals in Europe in return for a 5% fee. During this meeting, the agent told Knecht that the money he wished to launder was derived from cocaine trafficking.

In several additional meetings, Knecht and the agent further discussed details of the money-laundering scheme, along with another transaction proposed by Knecht, and Knecht identified the European bank and the account number against which checks would be drawn. At a final meeting in January 1994, Knecht presented the agent with a check for $950,000 drawn on a Swiss bank account and payable to the agent and a company which the agent had designated as co-payee. When Knecht and the agent went to the agent's car to retrieve the $1 million in cash, Knecht was placed under arrest.

To the extent pertinent here, Knecht was indicted on one count of attempted money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B) (1988 & Supp. V 1993). Pursuant to a plea agreement, she pleaded guilty to that count, and the government dismissed an unrelated count. In her plea allocution, Knecht stated that she had been "trying to put an unlawful business together" the purpose of which was "[t]o send out ... cash money from the United States." (Transcript of Plea Allocution dated June 1, 1994, at 12.)

When the district court asked Knecht about her understanding as to the source of the money, she responded: "He told me this is drug money." (*Id.* at 13.)

The presentence report prepared on Knecht recommended that her offense level be enhanced by three steps under § 2S1.1(b)(1) because she believed the money she was laundering was derived from drug transactions. Knecht objected, arguing that she had not sought out drug money but had merely been "ready to launder any money, whether it be stolen money, prostitution, [or] gambling money." (Sentencing Transcript dated August 24, 1994 ("Sentencing Transcript"), at 8.) She pointed out that the proposed enhancement would increase her prison term by 5–16 months, and she contended that since the agent's gratuitous statement to her was the sole basis for her belief that the money to be laundered was the proceeds of drug trafficking and hence was the sole basis for increasing her term of imprisonment under § 2S1.1(b)(1), the agent's statement constituted "sentencing entrapment." Knecht urged that the § 2S1.1(b)(1) enhancement not be applied to her or that the court depart downward to offset a gratuitous enhancement.

The district court rejected Knecht's arguments, observing that Knecht's willingness to launder money that was unrelated to drug trafficking was irrelevant in light of her demonstrated willingness to proceed with a transaction that she had expressly been told involved proceeds of drug trafficking. The court stated that the 1993 Guidelines contemplate a higher sentence for one who was willing to launder drug money because

> the guidelines recognize that the willingness to launder drug money is itself a separate and more blameworthy kind of activity than willingness to launder other illegal proce[ed]s, and it is something that makes drug dealing possible.

(Sentencing Transcript at 10.) The court concluded that a downward departure would be inappropriate since there was no entrapment in conventional terms, in that Knecht conceded that in no sense had her will been overborne.

## II. DISCUSSION

On appeal, Knecht argues that § 2S1.1(b)(1) should not apply in a case where the defendant's sole reason to believe the money to be laundered was drug money was an unsolicited statement to that effect by an undercover agent in a sting operation. We reject this contention.

The version of § 2S1.1(b)(1) applicable to Knecht instructs a sentencing court to increase a defendant's offense level by three steps

[i]f the defendant knew *or believed* that the funds [to be laundered] were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances.

1993 Guidelines § 2S1.1(b)(1) (emphasis added). This language, adopted in 1991, is sufficiently broad to indicate that the Sentencing Commission intended the provision to encompass a defendant who "believed" the funds she was laundering were the proceeds of narcotics trafficking even though that belief was misplaced. We see nothing in the text to suggest a different result merely because the provenance of the defendant's mistaken belief as to the source of the money was an agent's statement as part of an undercover sting operation. *See United States v. Payne*, 962 F.2d 1228, 1235 (6th Cir.) (one who "believed" he was laundering drug money only because of what he was told in "sting" came within "plain meaning" of § 2S1.1(b)(1)), *cert. denied*, ─ U.S. ─, 113 S.Ct. 306, 121 L.Ed.2d 229 (1992).

This reading of § 2S1.1(b)(1) is consistent with the thrust of the statute under which Knecht was convicted and is supported by the histories of the statute and the guideline. At the time of Knecht's offense, § 1956(a)(3)(B) provided, in pertinent part, as follows:

(3) Whoever, with the intent—

....

(B) to conceal or disguise the nature, location, source, ownership, or control of property *believed to be the proceeds of specified unlawful activity...,*

....

conducts or attempts to conduct a financial transaction involving property *represented to be the proceeds of specified unlawful activity* ... shall be fined ... or imprisoned for not more than 20 years, or both. For purposes of this paragraph ..., the term *"represented" means any representation made by a law enforcement officer* or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

18 U.S.C. § 1956(a)(3)(B) (1988 & Supp. V 1993) (emphasis added). The term "specified unlawful activity" includes trafficking in narcotics. *See* 18 U.S.C. § 1956(c)(7)(A) (Supp. V 1993) (defining that term to include most offenses listed in 18 U.S.C. § 1961(1) (Supp. V 1993), which, in pertinent part, included the "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic[s]").

Prior to 1988, to the extent pertinent here, § 1956(a)'s money laundering prohibition extended only to a defendant who, "knowing" that the money to be laundered represented the proceeds of some form of unlawful activity, conducted or attempted to conduct "a financial transaction which *in fact* involve[d] the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1) (Supp. V 1987) (emphasis added). The version of the Guidelines adopted with reference to that pre–1988 version of the statute provided that the three-step offense-level enhancement was to be imposed on any defendant who *"knew* that the funds were the proceeds" of unlawful narcotics activity. Guidelines § 2S1.1(b)(1) (1990) (emphasis added).

In 1988, Congress added subsection (3) to § 1956(a), extending the prohibition to property that the defendant "believed to be" proceeds of specified unlawful activity in transactions that law enforcement officers "represented" involved the proceeds of such activity. *See* Anti–Drug Abuse Act of 1988, P.L. 100–690 § 6465, 102 Stat. 4181, 4375 (codified at 18 U.S.C. § 1956(a)(3) (1988) (prohibiting attempt to launder property "represented by a law enforcement officer to be the proceeds of specified unlawful activity")); *see also* Annunzio–Wylie Anti–Money Laundering Act,

P.L. 102–550, Title XV, § 1531(b), 106 Stat. 4044, 4066 (1992) (codified at 18 U.S.C. § 1956(a)(3) (1988 & Supp. V 1993) (replacing "represented by a law enforcement officer" with "represented" but retaining definition of "represented" to include a "representation made by a law enforcement officer")). In expanding § 1956(a) in 1988 to reach not only a defendant who "kn[ew]" that the money laundered was "in fact" proceeds of a specified unlawful activity but also a defendant who "believed" the money to be such proceeds based on a "representation made by a law enforcement officer," Congress plainly intended to cast its net over defendants caught in "sting" operations. *See, e.g., United States v. Wydermyer,* 51 F.3d 319 (2d Cir.1995) (upholding conviction of defendants who agreed to launder sting money represented to be proceeds from illegal arms sales).

In light of the 1988 changes to the statute, the Guidelines were amended in 1991 to make § 2S1.1(b)(1)'s three-step offense-level enhancement applicable not only to one who "knew" the funds to be laundered were proceeds of narcotics trafficking but also to one who "believed" them to be such proceeds. The Sentencing Commission stated that the changes were made

> to reflect the enactment of subsection (a)(3) of 18 U.S.C. § 1956 that authorizes undercover 'sting' operations in money laundering cases. Such cases differ from those prosecuted under subsection (a)(1) in that the money being laundered is not actually criminal proceeds, but is government 'sting' money that an undercover officer represents to be criminal proceeds.

Guidelines App. C ¶ 378, at 204 (1991).

In sum, the history of the "or believed" language in the version of § 2S1.1(b)(1) applicable to Knecht clearly indicates that the Commission intended the provision to apply to a defendant whose only reason to believe the money to be laundered was drug money was a statement by an undercover agent. ▮ We see no impermissible "entrapment" in this application of § 2S1.1(b)(1) to Knecht. An entrapment defense normally "requires that a defendant convince the factfinder that government agents induced her to

commit an offense that she was not otherwise predisposed to commit." *United States v. Cuervelo,* 949 F.2d 559, 565 (2d Cir.1991); *see United States v. Russell,* 411 U.S. 423, 432–36, 93 S.Ct. 1637, 1643–45, 36 L.Ed.2d 366 (1973). The validity of the concept of "sentencing entrapment" has not been determined in this Circuit. *See, e.g., United States v. Rosa,* 17 F.3d 1531, 1551 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994). Even where it has been approved in theory, however, its potential application has been limited to "outrageous official conduct which overcomes the [defendant's] will." *See United States v. Barth,* 990 F.2d 422, 424 (8th Cir.1993) (internal quotes and brackets omitted).

In the district court, Knecht acknowledged her predisposition to launder money that was the proceeds of unlawful activity; she admitted that she believed that the money she intended to launder was drug money; and she conceded that the government had not overborne her will in securing her participation in the laundering of money she was told was narcotics transaction proceeds. The fact that the government proposed a crime that carried a penalty higher than the minimum does not mean that the court should refrain from imposing sentence based upon all of the characteristics of the conduct to which the defendant voluntarily agreed.

## CONCLUSION

We have considered all of Knecht's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.