UNITED STATES of America, Appellee,

v.

Ramon Emilio GOMEZ, Defendant,

Raymond Santos, Defendant–Appellant.

No. 191, Docket 96–1074.

United States Court of Appeals,
Second Circuit.

Argued Sept. 4, 1996.

Decided Jan. 7, 1997.

250

Michael M. Milner, New York City, for Defendant–Appellant Santos.

David L. Wales, New York City, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Alexandra Rebay, Assistant United States Attorney, of counsel), for Appellee.

Before: FEINBERG, CARDAMONE and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Raymond Santos appeals from a sentence of the United States District Court for the Southern District of New York, John E. Sprizzo, J. Following a plea of guilty, Santos was convicted in May 1995 of conspiracy to possess with intent to distribute approximately 125 grams of heroin, possessing heroin with intent to distribute, conspiracy to deal firearms, and two counts each of unlawfully dealing firearms and possessing a firearm as a convicted felon. Santos received a sentence of 96 months imprisonment followed by five years of supervised release. His appeal raises a number of challenges to his sentence, including whether Santos lacked the financial capacity to purchase 125 grams of heroin, whether he conspired with a culpable coconspirator to make the purchase, and whether he should have received a lesser sentence based on allegations of his minor role in the firearm transactions, his extraordinary acceptance of responsibility and cooperation, and the "sentencing manipulation" in the government's investigation. For reasons set forth below, we affirm.

## I. Facts and Proceedings Below

The relevant facts are relatively simple. In September 1993, an undercover agent (the U/C) of the Bureau of Alcohol, Tobacco and Firearms (ATF), posing as a drug dealer seeking to sell heroin and to purchase firearms to protect his drug operation, met with Santos and another individual (John Doe). Santos agreed to sell two pistols to the U/C for a total of $700, and told the U/C to deal with John Doe. The U/C handed $700 in cash to John Doe, who then gave the two pistols to the U/C and the $700 to Santos. At the meeting, Santos also mentioned that he sold heroin and cocaine and needed a new heroin supplier.

The next day, in a recorded telephone conversation, Santos and the U/C discussed the sale of two additional firearms, which Santos described as "an AK–47 and a Thompson." In the course of the conversation, the U/C explained that he needed the guns to protect his drug distribution "spots," and asked Santos which firearms he had found effective for that purpose. Santos assured the U/C that, for the purpose described, the additional guns and the pistols he had already sold him would "work! They sure as hell work!" Santos also discussed his own narcotics trafficking, and asked the U/C to provide him "fifty or a hundred" grams of heroin.

In a recorded conversation two days later, the U/C again told Santos that he needed the two additional firearms for use at his drug spots, explaining that he had recently been robbed. Santos agreed to sell him the guns. Later that afternoon, Santos and another individual met with the U/C and another undercover ATF agent (U/C–2) to transact the second gun purchase. During that meeting, Santos again inquired about purchasing heroin from the U/C. Santos stated that he was "using an eighth" of a kilogram (125 grams) "every week," and discussed the possibility of purchasing that amount or more.

In October 1993, in a recorded conversation, Santos agreed to purchase heroin from the U/C at $135 per gram, stating that the price was no problem for him. Although no specific quantity was discussed, the U/C calculated a total purchase price of $16,875.

The price did not surprise Santos, and he readily assented. Based on that price, the amount of heroin to be purchased was 125 grams. In a telephone conversation recorded the next day, the U/C specifically referred to 125 grams, and Santos again agreed. Santos and the U/C further agreed that Santos should bring $11,000 of the purchase price with him to the deal, the remainder to be paid later.

Thereafter, Santos and co-defendant Ramon Gomez met with the U/C and U/C–2 to purchase the heroin from them, an operation characterized by the government as a reverse sting.[1] The U/C represented that the "material" was in the trunk of his car and walked over to the car. Gomez followed at Santos' direction. When Gomez picked up the brown paper bag indicated by the U/C, law enforcement officers arrested him and Santos.

At the time of the arrests, the officers seized approximately $2039 in cash from Santos, and two slips of paper containing Santos' beeper number and a price list for drugs from Gomez. An inventory search of Santos' car, which was parked nearby, yielded 62 glassine envelopes of heroin, a small quantity of cocaine, a holster and bullets.

Santos and Gomez were indicted in November 1993. In May 1995, Santos pleaded guilty to all seven counts charged in the indictment against him. Gomez was indicted on only one count, conspiracy to possess heroin with intent to distribute. He was tried in June 1995 and acquitted. In January 1996, Santos was sentenced. This appeal, which raises only sentencing issues, followed.

## II. Discussion

### A. Capacity to Purchase

■ Santos first argues that he lacked the financial capacity to purchase 125 grams of heroin. Although Santos concedes that he had entered into negotiations to purchase the full amount, he and Gomez had only $2039 in their possession at the time they were arrested, enough to purchase some 15 grams of

heroin. He therefore asks us to remand for resentencing based upon the quantity of drugs that he did have capacity to purchase. We decline to do so.

Judge Sprizzo stated that "not only by a preponderance of the evidence, but by clear and convincing evidence ... [Santos] was capable of purchasing more drugs.... That argument as to his lack of capacity borders on the frivolous." Santos maintains that Judge Sprizzo applied the wrong legal criteria in this determination. The issue thus raised, in view of Santos' argument to us that our cases are inconsistent on the point, requires fuller discussion.

Both Santos and the government appear to agree that the relevant Sentencing Guideline is Section 2D1.1. Commentary to that section reads in relevant part:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance—actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense. In contrast, **in a reverse sting**, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. If, however, the defendant establishes that he or she **did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend**

1. In the usual undercover operation, a government agent or informant buys from a narcotics seller an agreed-upon quantity of a controlled substance. In a reverse sting, the government agent provides the agreed-upon quantity of controlled substance to a buyer for a prearranged price.

**to provide or was not reasonably capable of providing.**

U.S. Sentencing Commission Guidelines Manual, § 2D1.1, comment (n.12) (1995) (emphasis added) (Application Note 12). Santos contends that the last sentence of Application Note 12 required the sentencing court to consider whether he was reasonably capable of purchasing the agreed-upon quantity (125 grams) of heroin.

The plain language of the last sentence of Application Note 12 reveals that it applies only where a defendant is *selling* the controlled substance, that is, where the defendant *"provid[es]* the agreed-upon quantity of the controlled substance." (emphasis added) It is hard to believe that the narrowness of this language is inadvertent, coming immediately after a discussion of what happens in a reverse sting, where the government agent "provides" the controlled substance and the defendant provides only the money to purchase it. Moreover, in a reverse sting, as the government points out, drug traffickers making an illegal purchase frequently hold purchase money in reserve nearby for ready access while they test the quality of the drugs being purchased. We note also that drugs have been delivered on consignment, *United States v. Colon,* 905 F.2d 580, 582 (2d Cir.1990), or on credit with a down payment, *United States v. Fowler,* 990 F.2d 1005, 1006 (7th Cir.1993). These possibilities lend support to the logic of the Sentencing Commission's distinction.

It is true that this court has utilized different approaches in applying the predecessor to Application Note 12, U.S.S.G. § 2D1.4, comment (n.1) (Nov.1991) (Application Note 1), in the reverse sting context. In *United States v. Vargas,* 986 F.2d 35 (2d Cir.1993), we rejected an argument similar to that raised by Santos today, but we did so on factual grounds (just as Judge Sprizzo did in this case). Defendant Vargas was convicted of possessing cocaine with intent to distribute. He was sentenced on the basis of 50 kilograms, the amount of cocaine which he believed he was buying from the government undercover agent at the time of his arrest. *Id.* at 39. Vargas contended on appeal that he should have been found incapable of pur-

chasing the full amount of cocaine, as he had delivered to the supposed seller (the government agent) only $295,000 of the $500,000 purchase price upon taking possession. Without discussing Application Note 1, in effect at the time, this court upheld the sentence of the district court "in light of the ample evidence of the ability of Vargas and his associates to purchase 50 kilograms or more." *Id.* at 41.

In contrast, some four months later in *United States v. Alaga,* 995 F.2d 380 (2d Cir.1993), on similar facts we declined to consider whether the defendant was reasonably capable of tendering the full purchase price for the negotiated quantity of heroin. We stated that:

> The language of [Application Note 1] clearly indicates that the negotiated quantity is conclusive except where the defendant was the putative seller and neither intended nor was able to produce that amount. We perceive no reason to go beyond the plain language of the Note and to allow a putative buyer like Alaga to contest his ability to pay the sale price for the negotiated quantity. Where a seller neither intends nor is able to produce the negotiated quantity of narcotics, the Guidelines simply recognize that the crime could not have been committed as planned. Where the defendant is a buyer, however, and negotiates for a particular quantity, he or she fully intends to commit the crime as planned.

*Id.* at 383. On this view, it is not necessary to consider whether Santos was able to supply the cash to purchase the full 125 grams of heroin Santos and Gomez had negotiated to buy.

*Vargas* and *Alaga* are not inconsistent rulings, as Santos claims. In *Vargas,* the court simply never reached the issue of proper interpretation of the application note. The reasoning of *Alaga* clearly applies to interpretation of the last sentence of Application Note 12, relied on by Santos, and is controlling here. To support his contrary position, Santos relies on various decisions, including two of our own, *United States v. Hendrickson,* 26 F.3d 321 (2d Cir.1994) and *United States v. Adames,* 901 F.2d 11 (2d Cir.1990), but they do not change our view. *Hendrick-*

*son* did not involve a reverse sting[2] and is inapplicable here. *Adames,* which did involve a reverse sting, actually supports our position. We held there that the provision of former Application Note 1, which is substantially similar to the sentence in current Application Note 12 on which Santos mistakenly relies, "refers to a specific situation in which the defendant is a seller of drugs . . . ." 901 F.2d at 12. Here, Santos is a buyer of drugs.

The district court correctly calculated Santos' sentence on the basis of 125 grams of heroin, which was the agreed-upon amount in this transaction.[3]

### B. Conspiracy to Purchase

■ Santos next argues in a pro se brief that for sentencing purposes he should not be held liable for 125 grams of heroin. Since Gomez was acquitted after trial, Santos relies on our case law that a criminal defendant cannot be convicted of conspiracy absent a showing of agreement with someone other than a government agent or informant. E.g., *United States v. Hendrickson,* 26 F.3d at 333. However, since Santos pleaded guilty, he does not use this theory to challenge the sufficiency of his *conviction* for conspiracy.[4] Instead, he challenges the basis of his sentence. He argues that since he did not agree upon the *amount* of heroin (125 grams) with anyone except the U/C, that amount cannot be used for sentencing purposes. The argument has no merit.

■ Initially, we note the government's contention that Santos waived this objection to his sentence by failing to raise it. "Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." *United States v. Margiotti,* 85 F.3d 100, 104 (2d Cir.), *cert. denied,* —— U.S. ——,

117 S.Ct. 324, 136 L.Ed.2d 238 (1996). In order to preserve an issue for appeal, a defendant must either object to the pre-sentence report or raise the objection at the time of sentencing. *United States v. Rodriguez,* 943 F.2d 215, 216 (2d Cir.1991). With respect to this claim, Santos pursued neither route. Therefore, he must demonstrate that the judge's determination at sentencing that Santos conspired to purchase 125 grams of heroin constituted "plain error" under Fed. R.Crim.P. 52(b).

In determining that Santos conspired to purchase 125 grams of heroin, Judge Sprizzo could have properly considered Santos' own plea allocution, in which he recited both the amount of heroin and the presence and role of his coconspirator Gomez. *United States v. Madkour,* 930 F.2d 234, 237 (2d Cir.1991). That Gomez was acquitted of the conspiracy charge in a later, separate proceeding does not preclude the district court's determination. Cf. *United States v. Acosta,* 17 F.3d 538, 545 (2d Cir.1994) ("[O]ne defendant's conspiracy conviction does not become infirm by reason of jury verdicts of not guilty against all of his alleged coconspirators.") (citing *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). In Gomez's trial, the government failed to establish his participation in the conspiracy beyond a reasonable doubt. At Santos' sentencing, by contrast, the government met the much lower burden of establishing by a mere preponderance the amount of heroin which was the object of that same conspiracy. *United States v. Concepcion,* 983 F.2d 369, 388 (2d Cir.1992) ("[D]isputed facts relevant to sentencing, even under the Guidelines, need be established only by a preponderance of the evidence."); *see also United States v. Lanni,* 970 F.2d 1092, 1093 (2d Cir.1992) ("[A]n important distinction exists between the criminal law standard for convicting a

---

2. Presumably for that reason, neither the majority nor the dissenting opinion mention *Alaga,* which had been decided a year before and was authored by the dissenting judge in *Hendrickson.*

3. Santos refers to an unrecorded conversation in which he allegedly told the U/C that he wanted to purchase less than 125 grams. Judge Sprizzo clearly did not believe that the conversation took place. Santos offers no evidence that would lead

us to conclude that this finding was clearly erroneous.

4. Santos did unsuccessfully raise this challenge to his conviction in July 1995, two months after he had pleaded guilty. He thereafter elected to withdraw the argument and has not pursued it since.

defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy.")

On this record, we cannot say that Judge Sprizzo committed error at all—much less plain error—in determining that the quantity of heroin that Santos conspired to purchase was 125 grams.

### C. Minor Role Adjustment

■ Santos next argues that he should have received a downward adjustment in his sentencing level under the guidelines for having played a "mitigating role" in the two firearms transactions. We disagree.

■ Section 3B1.2 of the Sentencing Guidelines provides in relevant part:

Based on the defendant's role in the offense, decrease the offense level as follows

. . .

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

The determination whether to apply this sentencing mitigation "is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment (backg'd). The burden at sentencing is on the defendant to "prove his or her reduced culpability by a preponderance of the evidence." *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993). We "must 'accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts.' " *United States v. Davis*, 967 F.2d 84, 88–89 (2d Cir.1992) (internal brackets omitted) (quoting 18 U.S.C. § 3742(e)).

Although Santos maintained in the district court that he was neither the buyer nor the seller of the guns, he failed to submit an affidavit or any other evidence in support of his position. Nor did he even request an evidentiary hearing on the issue—despite his claim now that Judge Sprizzo should have held one. Before the judge, Santos' counsel characterized Santos' role as a "messenger" and "at best the broker" in the two deals, respectively. The district court considered and rejected these contentions, characterizing Santos' claim for minor role adjustment

to be "arrant nonsense." The recorded conversations amply support a finding that Santos was central to both gun transactions. On the record before us, Santos has failed to meet his burden of showing that the lower court erred.

### D. Cooperation with the Government

■ Santos further argues that he was entitled to a downward departure from the applicable sentencing range under the guidelines based on what he describes as extraordinary acceptance of responsibility and cooperation with the government. We disagree.

Santos argues that the district court failed to consider or rule on his motion for a downward departure. This argument misrepresents the record. In October 1995, Santos submitted to the district court a memorandum in support of his motion. In December 1995, the government responded in letter form, and in January 1996 Santos submitted a letter reply. At the sentencing hearing two days later, Judge Sprizzo was obviously aware of these documents, which raised this and several other objections to the pre-sentence report. The judge stated that, with one exception not relevant here, he was not persuaded by any of the arguments set forth. He nonetheless permitted Santos' counsel to argue in open court any issues he desired. During the hearing, which the judge characterized as taking "the better part of an hour," Santos did not raise the issue of his cooperation. This undoubtedly accounts for the judge's failure to mention it further.

■ In any event, the assistance which Santos alleges that he gave—disclosure of information leading to further investigation of others—is not ordinarily ground for a downward departure except upon a motion by the government pursuant to section 5K1.1 of the Sentencing Guidelines. This court has explained that:

in this Circuit a departure below a guideline range because of a defendant's cooperation with the Government with respect to the prosecution of others requires a motion by the Government, ... the refusal to make such a motion may be challenged only for misconduct or bad faith, ... and

cooperation with the Government in respects other than the prosecution of others or cooperation with the judicial system can, in appropriate circumstances, warrant a departure notwithstanding the absence of a Government motion.

*United States v. Agu,* 949 F.2d 63, 67 (2d Cir.1991) (internal citations omitted). The government did not file a 5K1.1 motion here, and Santos fails to allege any fact that would make the exceptions noted in *Agu* applicable.

### E. Sentencing Manipulation

■ Finally, Santos argues that the district court applied an erroneous standard of law in refusing to depart downwardly from the applicable sentencing range based on conduct he describes as "sentencing manipulation" in the course of the government's investigation.

Santos' claim is two-fold. First, he contends that the U/C set the weight of drugs he proposed to sell at 125 grams even after Santos advised the U/C he did not have enough money available to buy that amount. Second, he maintains that the U/C "gratuitously interjected" into conversations with Santos comments suggesting the U/C would use the guns sold to defend his drug "spots." In so doing, Santos argues, "the agent introduced a fact into the transaction which had nothing to do with his investigation of illegal gun trafficking and which had the effect of subjecting the defendant to a four level enhancement" under the Sentencing Guidelines.

"Sentencing manipulation" has been described as occurring "when the government engages in improper conduct that has the effect of increasing the defendant's sentence." *United States v. Okey,* 47 F.3d 238, 240 (7th Cir.1995). The status of sentencing manipulation as a defense in this circuit is unclear. In *United States v. Knecht,* 55 F.3d 54, 57 (2d Cir.1995), we considered the defense of "sentencing entrapment," which we described as normally requiring that "a defendant convince the factfinder that government agents induced her to commit an offense that she was not otherwise predisposed to commit." *Id.* We noted that "[t]he validity of the concept of 'sentencing entrapment' has not been determined in this Circuit," but

that even where it has been approved in theory, "its potential application has been limited to 'outrageous official conduct which overcomes the [defendant's] will.'" *Id.* (citing *United States v. Barth,* 990 F.2d 422, 424 (8th Cir.1993)). We then rejected Knecht's argument based on her acknowledged predisposition to commit the crime charged and concession that "the government had not overborne her will in securing her participation in" the underlying scheme. *Id.*

Santos argues that the subjective standard used in *Knecht,* focusing on defendant's predisposition to commit the offense charged, is wrong and simply duplicates the protections offered by the traditional entrapment defense. He urges this court to adopt instead a standard of sentencing manipulation which focuses on objectively outrageous government conduct, a standard which he believes was adopted by the Ninth Circuit in *United States v. Staufer,* 38 F.3d 1103, 1107–08 (9th Cir.1994).

We need not decide today whether we recognize such a doctrine, because under either the subjective or objective standard there was no outrageous government conduct here. While "[w]e can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime," *United States v. Connell,* 960 F.2d 191, 196 (1st Cir.1992), the record before us reveals nothing to warrant reversal of Santos' sentence on such a theory. Judge Sprizzo engaged in a balanced consideration of Santos' claim with respect to the quantity of drugs, but found

> no factual basis for [Santos'] claim of sentence manipulation here. The transcripts, if anything, show no more than the government's offer to sell a specified amount [of heroin] and [Santos'] willing acquiescence to buy. Where is the sentencing manipulation? Under [Santos'] theory of the case, any reverse sting operation would involve sentencing manipulation ...

We cannot say that this appraisal of the government's conduct was incorrect.

■ Moreover, there was no manipulation of Santos in the sale of firearms. Far

from "gratuitously interject[ing]" that he sought the guns for use at his drug "spots," the U/C obviously made his vulnerable drug operations a feature of his cover story to enhance its credibility. In response to the U/C's representations, Santos expressed neither surprise nor reluctance to continue the deal. Indeed, he eagerly advised the U/C which guns were best suited for his stated purpose.

### III. Conclusion

We have considered all of Santos' contentions and find them without merit. Accordingly, the sentence of the district court is affirmed.