UNITED STATES of America,
Appellee,

v.

Miguel CABAN;  Mark A. Tiwary;
Franklyn Gonzalez,
Defendants,

Eric Calderon;  Vicente Medina,
aka Pedro Pablo Contrera,
Defendants–Appellants.

No. 1066, Docket Nos. 98–1204
(L), 98–1205 (CON).

United States Court of Appeals,
Second Circuit.

Argued Dec. 11, 1998.

Decided April 12, 1999.

John H. Jacobs, New York, NY (Elizabeth Macedonio, on the brief), for Appellant Eric Calderon.

Michael Hurwitz, New York, NY (Hurwitz Stampur & Roth, on the brief), for Appellant Vincente Medina.

Stuart M. Altman, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Eastern District of New York; Emily Berger, Assistant United States Attorney, on the brief), for Appellee.

Before: WINTER, Chief Judge,
JACOBS and POOLER, Circuit Judges.

JACOBS, Circuit Judge:

Defendants-appellants Eric Calderon and Vincente Medina were arrested while stealing 50 kilograms of real and "sham" cocaine during a reverse sting operation, and were convicted of various narcotics and weapons offenses in the United States District Court for the Eastern District of New York (Raggi, J.). Calderon appeals both his conviction and sentence, after jury trial, on one count each of conspiracy and attempt to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846, as well as one count of use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); he argues that the district court erred in instructing the jury not to consider his motive for committing the crime, and in denying his application for a downward departure. Medina appeals his sentence after a guilty plea on one count of conspiracy to possess cocaine with intent to distribute and one count of use of a firearm during and in relation to a drug trafficking crime; he argues that the district court erred in considering the sham cocaine in the drug-quantity computation used to arrive at his base offense level.

We affirm Medina's sentence and Calderon's judgment of conviction. We dismiss Calderon's appeal of his sentence for lack of appellate jurisdiction.

## BACKGROUND

In or around December 1996, the New York Drug Enforcement Task Force ("NYDETF") commenced an investigation of an individual named Miguel Caban, after having learned from a confidential informant ("CI") that Caban was the leader of a ring that was robbing drug stash houses. The NYDETF set up a sting, using a second CI to approach Caban with an opportunity for a similar robbery. The second CI informed Caban that up to 50 kilograms of cocaine would be at a stash house, and Caban's group would be entitled to 50% of the take. Caban agreed to the robbery, and enlisted several individuals to assist—including appellants Calderon and Medina—promising five kilograms of the take to each man.

On March 27, 1997, Caban, Calderon, Medina, and their co-conspirators arrived at their target—a Brooklyn warehouse—in which the NYDETF had placed 5 kilograms of cocaine, 45 kilograms of a substance resembling cocaine, and several surveillance cameras. Calderon had

brought along two guns in his car, and handed them to Caban and Medina; Calderon had armed himself with a knife. Shortly after the group entered the warehouse and commenced packaging the cocaine, they were arrested by agents of the NYDETF. Calderon and Medina were charged with conspiracy and attempt to possess cocaine with intent to distribute, as well as with use of a firearm during and in relation to a drug trafficking crime.

Medina pled guilty to the conspiracy and firearms charges. At his sentencing, the district court considered all 50 kilograms (real *and* sham cocaine) in determining his base offense level on the conspiracy charge. Under Section 2D1.1 of the United States Sentencing Guidelines, U.S.S.G. § 2D1.1, that quantity corresponds to an offense level of 36. The district court took note that the government had in effect predetermined this offense level by stocking the warehouse, and found that the usual *two*-level departure for acceptance of responsibility did not adequately account for "these extraordinary circumstances." The district court thus downwardly departed *four* levels to an offense level of 32. Factoring in Medina's criminal history level of VI, the district court sentenced him to 210 months of incarceration on the conspiracy charge, 60 months of incarceration (consecutive) on the firearms charge, 5 years of supervised release, and a $200 special assessment.

Calderon decided to proceed with a jury trial and intended to present a duress defense, arguing that he participated in the robbery out of fear that Caban would kill him if he refused. However, the court granted the government's motion *in limine* to preclude this defense, on the ground that absent proof that Calderon lacked the opportunity to warn the police, the supporting facts were legally insufficient to establish duress.

Despite the court's ruling *in limine*, Calderon began testifying at trial that Caban had forced him to commit the robbery. The court promptly excused the jury and offered Calderon a choice: he could either (i) conform to the Court's pretrial ruling and make no reference to Caban's alleged threats or (ii) testify in disregard of the ruling, but accept a jury instruction that the Court had already rejected his duress defense on legal grounds. Calderon chose the latter.

Calderon then proceeded to testify that he was threatened, that he lacked advance knowledge of the March 27 robbery attempt or of the volume of cocaine at the warehouse. This testimony was contradicted by Caban, who testified that Calderon was a willing participant in the robbery attempt and had prior knowledge of the robbery before arriving at the warehouse.

In charging the jury, the district court decided that an additional instruction would be needed to prevent the jury from erroneously accepting Calderon's thinly-disguised duress defense. The now-challenged instruction stated:

> [T]he government is not required to prove motive in this case. Motive can, however, sometimes be considered in determining if knowledge and intent have been proved. But I caution you that if knowledge and intent are proved beyond a reasonable doubt, that proof is not defeated by evidence of some mitigating motive.
>
> So in this case, if you are otherwise convinced beyond a reasonable doubt that the defendant did understand the nature of conduct he engaged in and did intend to do acts that the law forbids, the claim that he acted out of fear would not alter the fact that his conduct was knowing and intentional[ ].

In formulating its charge, the district court allowed Calderon's counsel to present any caselaw holding that a fear motive could trump otherwise sufficient proof of knowledge and intent, but none was presented. The jury convicted Calderon on all counts.

At his sentencing, Calderon sought a downward departure because his conviction resulted from a reverse sting in which

the government had unique control over the quantity of cocaine placed in the warehouse. In essence, Calderon argued that the entire 50 kilograms of real and sham cocaine should not be attributed to him. The district court noted that it possessed the authority to so depart in the right circumstances, but declined to do so because Calderon and his group were already in the process of stealing the packages of cocaine when they were arrested:

> I consider it highly probative that both of these defendants were actually involved in starting to move some of these drugs when they were arrested. This is why I said ... that but for the arrest all the evidence shows me that they would have been out the door with the drugs in the car and would have distributed them....

After computing Calderon's offense level of 36 and his criminal history level of I, the district court sentenced him to 188 months of incarceration on the conspiracy and attempt charges, 60 months of incarceration (consecutive) on the firearms charge, 5 years of supervised release, and a $300 special assessment.

## DISCUSSION

### A. Guidelines Calculation

Calderon appeals the denial of his application for a downward departure; Medina appeals the calculation of his base offense level. Their arguments are substantively the same.

### 1. Calderon

▆ Because the district court recognized its authority to downwardly depart in reverse sting cases, but chose not to do so, we lack appellate jurisdiction to consider Calderon's appeal on this issue "absent a showing that a violation of law occurred or that the guidelines were misapplied." *United States v. Adeniyi,* 912 F.2d 615, 618 (2d Cir.1990); *see also United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994). Here, the district court's ruling was not prompted by any impermissible consideration or error of law; the court recognized its power to depart. Moreover, the Guidelines were not misapplied; Calderon's actions evidenced an intent to steal all 50 kilograms of real and sham cocaine, and the court correctly calculated Calderon's offense level. We therefore dismiss Calderon's appeal of his sentence for lack of jurisdiction.

### 2. Medina

▆ Medina failed to object at sentencing to the district court's calculation of his base offense level; his argument is therefore waived on appeal absent "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b); *see also United States v. Taylor,* 92 F.3d 1313, 1335 (2d Cir.1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 717 (1997); *United States v. Keppler,* 2 F.3d 21, 23–24 (2d Cir.1993).

Section 2D1.1(c) of the Sentencing Guidelines requires the sentencing court to calculate a defendant's base offense level on the basis of the drug quantity involved in the transaction—including theft—in which the defendant agreed or intended to engage. *See* U.S.S.G. § 2D1.1(c) (1997); *United States v. Howard,* 998 F.2d 42, 50 (2d Cir.1993). Application Note 15 of this section provides for a downward departure in a particular reverse sting situation that is not at issue here:

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, comment. (n.15) (1997). Medina implicitly argues that we should expand Application Note 15 to fit this case because the Guidelines calculation was dependent upon the amount of cocaine that the NYDETF placed in the warehouse, rather than any intent he may have formed; he argues that the district court should have considered only the amount of cocaine that he and his co-conspirators were reasonably capable of obtaining without government intervention, and computed his offense level accordingly.[1]

Whatever appeal this argument may have in other circumstances, the district court did not commit plain error in treating as dispositive conduct by Medina that evidenced his intent to steal 50 kilograms of cocaine. Before entering the warehouse, he knew that as many as 50 kilograms of cocaine would be inside; upon entering the warehouse, he saw what appeared be 50 kilograms of cocaine; while inside the warehouse, he participated in the attempt to steal all 50 kilograms. At no point did Medina attempt to withdraw from the conspiracy, or attempt to steal any less than the full haul available in the warehouse. Medina was one of the several men who had brought weapons and vehicles with which to take possession of any drugs they found inside the warehouse.

It is unsettling that in this type of reverse sting, the government has a greater than usual ability to influence a defendant's ultimate Guidelines level and sentence. It appears to be no coincidence that the NYDETF chose to place no less than 50 kilograms of real and sham cocaine in the warehouse; in Medina's case, the difference in offense levels between 49.9 kilograms and 50 kilograms under U.S.S.G. § 2D1.1 potentially could entail as much as 78 months of incremental imprisonment.[2] But we have no ability to force a downward departure as a matter of law. Moreover, the district court undertook to offset any potential for prosecutorial overreaching by departing an additional two levels for acceptance of responsibility, expressly noting that the weight of the drugs made the Guidelines level too severe for the usual two-level departure to correct.

The current Sentencing Guidelines recognize a potential for abuse in reverse stings, but address only the situation in which the government stretches the defendant's limited resources—and increases

---

1. This argument parallels the "sentencing manipulation" and "sentencing entrapment" doctrines referenced in *United States v. Gomez*, 103 F.3d 249, 256 (2d Cir.1997), and *United States v. Knecht*, 55 F.3d 54, 57 (2d Cir.1995). " 'Sentencing manipulation' has been described as occurring 'when the government engages in improper conduct that has the effect of increasing the defendant's sentence.' " *Gomez*, 103 F.3d at 256 (quoting *United States v. Okey*, 47 F.3d 238, 240 (7th Cir.1995)). Sentencing entrapment "normally 'requires that a defendant convince the fact-finder that government agents induced her to commit an offense that she was not otherwise predisposed to commit.'·" *Knecht*, 55 F.3d at 57 (quoting *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir.1991)); *see also United States v. Connell*, 960 F.2d 191, 196 (1st Cir.1992) ("We can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime."). As we stated in *Gomez*, however, the status of each doctrine in this Circuit is unclear. *See Gomez*, 103 F.3d at 256. We make no attempt to decide their status today, as Medina could not successfully raise either defense on the facts of this case.

2. Under the Guidelines, a defendant who has an offense level of 36 (for stealing at least 50 but less than 150 kilograms of cocaine) and a Criminal History Category of VI qualifies for a sentencing range of between 324 and 405 months of imprisonment. A defendant with an offense level of 34 (for stealing at least 15 but less than 50 kilograms of cocaine) and the same Criminal History Category qualifies for a sentence of between 262 and 327 months of imprisonment. Assuming the district judge were to sentence both defendants to the highest amount of incarceration within their ranges, the difference in sentences would be 78 months' imprisonment. (Of course, the difference would be much greater—143 months' imprisonment—if the judge were to sentence the first defendant to the highest amount and the second to the lowest.)

the quantity involved in the drug transaction—by discount pricing. We invite the Sentencing Commission's attention to some more comprehensive measure that would consider what happens when a reverse sting involves a theft in which the government sets the bait (rather than a purchase in which the government sets the price).

### B. Jury Instruction

■ Calderon argues that the district court erred by instructing the jury that Calderon's motive was irrelevant so long as his knowledge of and intent to commit the crime had been established beyond a reasonable doubt. We generally review challenged jury instructions *de novo*, reversing only if the charge, taken as a whole, was prejudicial. *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir.1998); *United States v. Locascio*, 6 F.3d 924, 939 (2d Cir.1993).

■ The challenged instruction was sound. A duress defense requires (*inter alia*) the defendant's showing that there was no reasonable opportunity to escape the threat other than by engaging in the unlawful activity. *See United States v. Podlog*, 35 F.3d 699, 704 (2d Cir.1994); *United States v. Stevens*, 985 F.2d 1175, 1181 (2d Cir.1993); *United States v. Alicea*, 837 F.2d 103, 106 (2d Cir.1988). In order to be entitled to a duress instruction, "[a] defendant must present some evidence on all of the elements of the defense, including the distinct element of lack of a reasonable opportunity to escape the threatening situation." *Podlog*, 35 F.3d at 704 (quoting *United States v. Bakhtiari*, 913 F.2d 1053, 1057–58 (2d Cir.1990)) (internal quotation marks omitted). Calderon fails to meet this burden. He had several opportunities to end his involvement in the conspiracy and warn the police, but he did not do so. Accordingly, the district court barred him from presenting a duress defense—both in its pretrial ruling and its curative jury instruction; neither ruling was error, *cf. id.* ("Absent such a showing, the district court need not submit the defense to the jury.").

### CONCLUSION

For the aforementioned reasons, we affirm Calderon's judgment of conviction and Medina's sentence. Calderon's challenge to his sentence is dismissed.