## UNITED STATES of America

v.

### Eric GILES, Defendant.

### No. 91 Cr. 0360 (RWS).

United States District Court,
S.D. New York.

July 15, 1991.

---

## SENTENCING OPINION

SWEET, District Judge.

Defendant Eric Giles ("Giles") was convicted following a jury trial on June 13, 1991 on one count of laundering of a monetary instrument in violation of 18 U.S.C. § 1956(a)(3). For the reasons set forth below, Giles will be sentenced to a term of 18 months of imprisonment followed by a two year term of supervised release, subject to the sentencing hearing now set for July 16, 1991. Pursuant to 18 U.S.C. § 3013, a special assessment of $50.00 is mandatory.

### The Defendant

Giles is a fifty-four year old British citizen who resides in Wales in the United Kingdom. He has no criminal record and no history of encounters with legal authorities. He and a partner operate a small financial brokerage firm in Wales.

### The Offense

In early April 1991, Giles flew to New York from England to meet with George Malina ("Malina") and to receive $100,000 from Malina to invest in Europe. During several meetings with Malina and an undercover FBI agent, Giles was told that the money, which was all in cash, was derived from the sale of cocaine. Giles discussed possible methods for getting the money out of the country, ultimately agreeing to take it on board his return flight to England in a briefcase. On April 10, Malina and the agent gave Giles the money and drove him to the airport, where he was arrested and charged with money laundering.

At trial, Giles asserted several defenses: first, that Malina had entrapped him into committing the crime, second, that because of prior business dealing between Giles and Malina, Malina was aware that Giles was in severe financial circumstances, and that his behavior based on that knowledge amounted to outrageous government conduct, and third, that Giles never intended to take the money onto the airplane, but was merely waiting until he got into the airport where he would be able to turn the money over to Customs Officers and explain the situation. Notwithstanding these defenses, Giles was convicted by a jury on June 13, 1991.

### The Guidelines

The Presentence Report prepared by the U.S. Probation Office grades the charges against Giles under the United States Sentencing Guidelines (the "Guidelines") at a total offense level of 25 and assigns him a Guidelines criminal history category of I. The Sentencing Table provides for an imprisonment range of 57 to 71 months for an offender with Giles's numerical sentencing characteristics.

■ The Government seeks a two-point enhancement under § 3C1.1 of the Guidelines, based on its claim that Giles committed perjury at trial when he testified that he was not aware prior to his arrival in New York that the money which Malina intended to deliver to him was drug-related. Such an enhancement is not warranted under these circumstances, as Giles did not deny that he was informed of the source of the money after he had arrived in New York, and the jury might well have believed his testimony that he was unaware of this information before arriving and convicted him anyway. Thus there is insufficient support for the conclusion that this testimony constituted perjury or obstruction of justice.

*Departure*

■ Giles seeks a downward departure from the Guidelines based on his claims of entrapment and outrageous government conduct. In order to determine whether a departure is appropriate, it is necessary to consider in detail the events leading up to the offense. While many of these details have been supplied by Giles, neither the evidence at trial nor the Government has contradicted them.

In 1990, shortly after Giles and his partner had set up their brokerage firm, they began to deal with a person named Steve Dobson ("Dobson"). Eventually, they invested over $30,000 in a series of projects which Dobson claimed to be organizing, and after Dobson disappeared with the money, Giles and his partner were forced to repay their clients out of their own pockets. As a result, Giles was forced to mortgage his home and he ended up on Government Income Support, the equivalent of welfare. After several months, Giles reestablished contact with Dobson, now located in Texas, who claimed that others in his company had been responsible for the loss of Giles' firm's money. Eventually, Dobson put Giles in contact with Malina.

Unknown to Giles, Malina had been arrested and convicted of money laundering late in 1990, and had been released pending sentencing, currently scheduled for late 1991, for the purposes of cooperating with the Government. Knowing of Giles' situation, Malina contacted him and, after several suggestions of money-making schemes that went nowhere, offered him $100,000 to invest on behalf of Malina's associates if Giles would come to New York to collect it. According to Giles, he elicited confirmation from Malina prior to making the trip that the money was "clean and clear," *i.e.*, that there would be no legal impediment to Giles' handling and investment of the money. Giles claims that only after he had journeyed to New York did he learn that the money was the product of cocaine trafficking, at which point he elected to turn the money over to Customs and to turn Malina in.

The jury's verdict convicting Giles despite his entrapment defense reflects a finding that Giles was predisposed to commit the crime notwithstanding the Government agents' assistance to him, thus entrapment cannot be used to justify departure in the sentencing.

However, because of how it evolved, this case is indeed an unusual one. There is no evidence which indicates that Giles had any prior history of money laundering, and the fact that he was on welfare strongly suggests that he was not. Not only was he in extreme financial circumstances—he was unable even to afford the plane fare to New York, and was forced to rely on a client to pay his travel expenses—he had been placed there by Dobson, who had represented himself as an associate of Malina's. While economic hardship alone is not sufficient to justify a departure, § 5K2.12, the circumstances here seem to go beyond mere economic pressure.

Moreover, while the use of informants and cooperating defendants is an essential tool of law enforcement in this day and age, the vice in permitting Malina, a convicted felon, to use his prior personal relationship and knowledge of Giles' difficulties to involve a previously innocent individual in a criminal scheme and thereby obtain a reduction in his own sentence at virtually no risk to himself is an appropriate sentencing consideration even though it does

not rise to the level of a defense to the crime.

Therefore a downward departure from the sentence specified by the Guidelines is warranted, because the unique circumstances presented by this case involve mitigating factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Specifically, the factors not considered relate to the manner in which Giles was set up for this crime by the Government's agent Malina. As a recent article notes, "[n]othing in the guidelines or their legislative history suggests that the Sentencing Commission considered the sting problem." Pilchen, *The Underside of Undercover Operations*, Legal Times, July 15, 1991, at 39; *cf. United States v. Osborne*, 935 F.2d 32, 35 n. 3 (4th Cir.1991) (acknowledging district court's authority to depart downward in case of outrageous government conduct not amounting to entrapment).

Consequently, the court will depart from the Guidelines and reduce Giles's sentence to eighteen months in prison.

*Supervised Release and Fine*

The Guidelines also call for a term of supervised release of between two and three years. Ordinarily, the Guidelines would require imposition of a fine in an amount above $17,500. However, § 5E1.2(f) of the Guidelines provides for reduction of the fine here because the Presentence Report indicates that Giles possesses minimal financial resources.

*Conclusion*

Giles will be sentenced to a prison term of eighteen months, to be followed by a two year term of supervised release, together with the mandatory special assessment of $50.

This sentence is subject to further hearing on July 16, 1990.

It is so ordered.