UNITED STATES of America,
Appellee,

v.

Abdul Majid BALA, also known
as Sealed Defendant # 2,
Defendant,

Kantilal Patel, also known as Sealed
Defendant # 1, Defendant–
Appellant.

No. 99–1597.

United States Court of Appeals,
Second Circuit.

Argued: May 11, 2000.

Decided: Dec. 28, 2000.

Paul Shechtman (Nathaniel Z. Marmur, on the brief), Stillman & Friedman, New York, NY, for Defendant–Appellant Kantilal Patel.

Barbara D. Cottrell, Assistant United States Attorney, (Daniel J. French, United States Attorney, Kevin P. Dooley, Assistant United States Attorney, on the brief), Albany, NY, for Appellee.

Before WALKER, Chief Judge,* and KEARSE and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Kantilal Patel appeals from the October 4, 1999, judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *then-Chief Judge*) sentencing him principally to 51 months imprisonment after a trial jury convicted him of conspiracy to launder money and substantive money laundering, in violation of 18 U.S.C. § 1956(h) and (a)(3). Although Patel raises several arguments on appeal relating to his trial, our primary focus is his contention that Judge McAvoy erred in refusing to grant a downward departure at the time of sentencing for "imperfect entrapment." We affirm Patel's conviction and sentence in all respects.

## BACKGROUND

The government filed a sealed five-count indictment on October 29, 1998, charging Patel with three counts and Abdul Majid Bala with two counts of money laundering and both with one count of conspiracy to launder money. The indictment flowed from a government investigation using undercover agents from the Criminal Investigation Division of the Internal Revenue Service ("IRS") and a cooperating defendant. The investigation began in September 1996, when IRS agents arranged several meetings with Bharat Vakharia to negotiate money laundering transactions. Authorities arrested Vakharia in December 1996, and he agreed to cooperate with the government. Vakharia's cooperation led authorities to Patel. Vakharia told the government that Patel had invited him to a party in the summer of 1996 and that the two men discussed money laundering. Based on this background information, Vakharia made several telephone calls to Patel in January, February and May 1997, and the government monitored the calls. In their May conversation, the men discussed money laundering transactions.

On May 15, 1997, Patel met with Vakharia and an undercover agent in Endicott, New York and arranged to launder $25,000 in alleged heroin trafficking proceeds for a fee. Patel completed the transaction in a June 4, 1997, meeting. At the June 4 meeting, Patel introduced the agent to Bala, whom Patel had recruited. Patel had met Bala, who was Canadian, only the day before. A Canadian businessman whom Patel knew referred Patel's money laundering inquiries to Bala. On November 20, 1997, Bala met with an undercover agent in Buffalo to launder $50,000 in alleged heroin trafficking proceeds for a fee. The agent had first contacted Patel in order to reach Bala. On March 6, 1998, Patel and Bala met an undercover agent in Manhattan to launder $140,000 in alleged

---

* After the date of oral argument, Judge Walker was elevated to Chief Judge.

heroin trafficking proceeds. The agent had arranged the meeting directly with Bala, but Bala brought Patel along and gave Patel a portion of his fee. Finally, on November 9, 1998, Bala met with an undercover agent in Buffalo to launder $231,250. Police arrested Bala during the November 1998 meeting. Police arrested Patel on December 3, 1998.

Bala pleaded guilty to a charge of conspiracy to launder money on January 25, 1999. In a superseding indictment filed on March 11, 1999, the government charged Patel with conspiracy to engage in money laundering and five substantive money laundering counts based on the four transactions outlined above. Although he initially cooperated with authorities, Patel went to trial on April 19, 1999. The jury returned a guilty verdict against him on all counts on April 23, 1999. In the course of post-verdict motion practice, Judge McAvoy granted defendant's motion to dismiss counts 2 and 3 of the indictment, which concerned the $25,000 transaction in Endicott, because the government failed to prove that the deal had a nexus to interstate or foreign commerce as Section 1956(a)(3) required. The district court denied defendant's motion in all other respects. Judge McAvoy sentenced Patel on September 24, 1999, to 51 months imprisonment, two years supervised release, $16,000 fine, and $400 special assessment. Patel appeals his conviction and sentence.

## DISCUSSION

### I. Downward departure for imperfect entrapment

Patel claims that Judge McAvoy misapprehended his authority to make a down-

ward departure at Patel's sentencing for "imperfect entrapment." The government responds that the imperfect entrapment doctrine is questionable in this circuit and does not apply to the facts of this case in any event. The government also contends that the district court rejected on the merits Patel's contentions related to entrapment when it denied defendant's post-verdict challenges to the jury's findings of guilt.

A defendant may not appeal a district court's decision not to make a discretionary downward departure unless the court relied "on the mistaken belief that it lacked authority to depart." *United States v. Martin,* 78 F.3d 808, 814 (2d Cir.1996) (quoting *United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994)). We review a district court's decision to make a sentencing departure for abuse of discretion, which includes making an error of law. *See United States v. Bryson,* 163 F.3d 742, 746 (2d Cir.1998). In the case of the district court's refusal to grant a downward departure, we review the decision only if the sentencing judge imposed a sentence in violation of law or incorrectly applied the Sentencing Guidelines. *See United States v. Campo,* 140 F.3d 415, 418 (2d Cir.1998) (*per curiam*). Some circuits have determined that "imperfect entrapment," described as "aggressive encouragement of wrongdoing, although not amounting to a complete defense," is a proper ground for downward departure at sentencing pursuant to U.S.S.G. § 5K2.12.[1] *United States v. Garza–Juarez,* 992 F.2d 896, 912 (9th Cir.1993); *see also United States v. Osborne,* 935 F.2d 32, 35 n. 3 (4th Cir.1991) (noting district court's authority

---

1. The policy statement at Section 5K2.12 provides in part—

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to

which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

U.S.S.G. § 5K2.12, p.s.

to depart downwardly for outrageous government conduct); *United States v. Barth,* 990 F.2d 422, 424–25 (8th Cir.1993) (recognizing that sentencing entrapment generally is a valid departure ground but not on facts of that case).

Patel's imperfect entrapment argument is that a departure was warranted because he led a law-abiding life until encountering the government's sting operation and he was so inept at his crime that no real criminal would have done business with him.[2] The sentencing transcript shows that Judge McAvoy refused to consider imperfect entrapment as a ground for a downward departure motion because he believed that Second Circuit law did not authorize it.[3]

 The Supreme Court has established a two-part test to determine whether a particular factor is a permissible basis for a downward departure. *See Koon v. United States,* 518 U.S. 81, 109, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The court must first determine whether reliance on the factor is "proscribed, as a categorical matter," by the guidelines, and if it is not, the court must then determine whether the factor "takes the case outside the heartland of the applicable Guideline." *Id.* The first question—"whether a factor is a permissible basis for departure under any circumstances"—is a matter of law, and therefore "the court of appeals need not defer to the district court's resolution of the point." *Id.* at 100, 116 S.Ct. 2035.

 While to date we have not decided whether imperfect entrapment is proscribed by the guidelines as a ground for

downward departure, we can find nothing in the guidelines to prohibit a district court from considering conduct by the government that does not give rise to an entrapment defense but that is nonetheless "aggressive encouragement of wrongdoing." *Garza–Juarez,* 992 F.2d at 912; *see also United States v. Giles,* 768 F.Supp. 101, 103–04 (S.D.N.Y.), *aff'd without op.,* 953 F.2d 636 (2d Cir.1991). Moreover, the policy statement in Section 5K2.12 can reasonably be read to authorize such a departure in appropriate cases. Nevertheless, it is for the district courts to decide for themselves whether, in a particular case, a downward departure based on imperfect entrapment would remove that case from the "heartland of the applicable Guideline." *See United States v. Bonnet–Grullon,* 212 F.3d 692, 700 (2d Cir.2000) ("The determination of whether a case is within the heartland of the applicable guideline cannot be a matter of generalization."). We recognize the district courts' "institutional advantage over appellate courts in making these sorts of determinations." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035.

 Although the district court here apparently believed that, as a matter of law, it was unable to consider imperfect entrapment, its misapprehension was harmless. In imposing sentence in the present case, Judge McAvoy noted that after looking at all of the evidence before him, he had concluded that Patel became involved in the money-laundering scheme solely out of greed. Although there might be cases whose circumstances would warrant a downward departure on the basis of imperfect entrapment, the record here does not

---

**2.** We note that Patel's argument about his total lack of criminal history is reminiscent of a request for downward departure based on aberrant behavior. *See Zecevic v. United States Parole Comm'n,* 163 F.3d 731, 735–36 (2d Cir.1998). The record does not support a departure on that ground, however.

**3.** Contrary to the government' contention, Judge McAvoy's statement near the conclusion of the sentencing proceeding that he recognized his authority to make a downward

departure concerned not the imperfect entrapment ground, which he already had rejected, but several other grounds that Patel raised and the district court considered. For his part, defense counsel misconstrues the district court's statement expressing a hope that defendant could win a sentencing appeal as concerning the imperfect entrapment defense rather than a general statement about the severity of punishment that the Sentencing Guidelines prescribed.

suffice to take Patel out of the heartland of the relevant guideline, U.S.S.G. § 2S1.1. Accordingly, the district court would have abused its discretion had it applied imperfect entrapment to justify a downward departure in this case. *Cf. United States v. Rivera,* 192 F.3d 81, 86 (2d Cir.1999) (refusing to remand notwithstanding that district court incorrectly believed that it could not, as a matter of law, depart downward, because to have departed on the facts presented would have been abuse of discretion).

■ Patel also contends that he was subjected to sentencing entrapment or sentencing manipulation, in that his punishment, which is directly related to the value of the funds at issue, increased because IRS agents arranged the $231,250 transaction with Bala in November 1998, after a grand jury already indicted Patel and Bala. This court has not determined whether either sentencing entrapment or sentencing manipulation is a valid departure ground. *See United States v. Caban,* 173 F.3d 89, 93 n. 1 (2d Cir.), *cert. denied,* 528 U.S. 872, 120 S.Ct. 174, 145 L.Ed.2d 147 (1999); *United States v. Gomez,* 103 F.3d 249, 256 (2d Cir.1997); *United States v. Knecht,* 55 F.3d 54, 57 (2d Cir.1995). We have held that there was no basis to find sentencing entrapment where a defendant's principal contention concerned the timing of his arrest after entering a sting transaction. *See United States v. Rosa,* 17 F.3d 1531, 1551 (2d Cir.1994) (holding that "[e]ven if we were prepared to suggest that the courts should inject their views into the government's exercise of discretion as to whether and when its investigation was sufficiently complete that it should have been terminated, we surely would not second-guess the government in the present case"). We also have suggested that, if a departure on the ground of sentencing entrapment or sentencing manipulation is valid, it would likely require a showing of "outrageous" government conduct. *Knecht,* 55 F.3d at 57 (sentencing entrapment); *Gomez,* 103 F.3d at 256 (sen-

tencing manipulation). Although the status of either concept as a departure ground remains unclear, it is plain that these concepts were unavailable to Patel, for the present record provides no basis for finding the government's conduct outrageous.

## II. Trial issues

### A. Entrapment

During the trial, Patel raised the defense of entrapment to the conspiracy and substantive money laundering charges. The jury rejected the defense and convicted Patel. In denying Patel's motion for a judgment of acquittal, Judge McAvoy ruled that "a rational finder of fact could have found beyond a reasonable doubt that defendant was predisposed to commit the crime of money laundering and, thus, rejected the defense of entrapment." On appeal, Patel renews his challenge to his conviction and contends that he was not "positionally disposed" to launder money because he had no previous experience or acquaintances in the illegal business. Defendant argues that he reluctantly became involved in the crime only when the government sent Vakharia to induce his participation.

■ Patel's argument is in substance a challenge to the sufficiency of the evidence as to his predisposition. *See United States v. Salerno,* 66 F.3d 544, 547 (2d Cir.1995). A defendant challenging his conviction on sufficiency grounds faces a "heavy burden." *United States v. Matthews,* 20 F.3d 538, 548 (2d Cir.1994). We must affirm defendant's conviction if, "viewing all the evidence in the light most favorable to the prosecution, [we] find[ ] that '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997) (citation omitted; emphasis in original). We must view as a whole all of the trial evidence and defer to the jury's assessment of witness credibility and the

jury's resolution of conflicting testimony. *Id.* "[T]he government's proof need not exclude 'every possible hypothesis of innocence.'" *Id.* (citation omitted).

▄▄▄▄▄▄ Entrapment is an affirmative defense that Patel must show by a preponderance of the evidence. *See United States v. Williams,* 23 F.3d 629, 635 (2d Cir.1994). The defense has two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *Salerno,* 66 F.3d at 547. If a defendant presents credible evidence of government inducement, then the prosecutor must show predisposition beyond a reasonable doubt. *Id.* "A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *Id.* (citations and internal quotation marks omitted). The government may prove predisposition by, among other things, showing defendant's previously formed design to commit the crime or his willingness to commit the crime "as evidenced by [his] ready response to the inducement." *Id.* (internal quotation marks omitted).

▄▄▄▄▄▄ The jury rationally could infer that Patel's conversation with Vakharia about money laundering before Vakharia agreed to cooperate with the government indicated Patel's predisposition to commit the crime. *See Williams,* 23 F.3d at 635. Patel asks us to adopt the approach in a Seventh Circuit case that considered defendant's "positional" disposition and whether "defendant [was] so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so." *United States v. Hollingsworth,* 27 F.3d 1196, 1200 (7th Cir.1994) (*en banc* ). Without commenting on the degree, if any, that this approach materially differs from that in the Second Circuit, we hold that the Seventh Circuit standard does not benefit Patel because the government presented sufficient evidence that Patel, albeit a novice money launderer, previously formed the necessary intent to participate in the crime. A jury also rationally could infer that Patel's previous acquaintances adequately situated Patel to commit the crime.

Although Patel argues that the evidence showed his lack of experience in money laundering and his reluctance to participate in the crime, the jury rationally could infer otherwise from the same evidence. As the district court pointed out, for example, what the defendant interprets as his reluctance the jury could interpret as Patel holding out for more money. The evidence also showed that Patel readily agreed to commit the crime upon receiving the government's inducement and even insisted on remaining involved. We therefore reject defendant's challenge to his conviction.

### B. *Pinkerton* charge

▄▄▄▄ Patel next challenges the district court's instruction to the jury regarding criminal liability pursuant to *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). This liability theory is relevant to counts 4 and 6 of the indictment, which concerned money laundering transactions for which only Bala was present. Defendant argues that the instruction was plainly erroneous because it permitted the jury to find Patel guilty of both charged substantive crimes even if he reasonably could foresee only one of the crimes. Defendant argues that the instruction as a whole gave the mis-impression that *Pinkerton* is a strict liability theory making Patel responsible for all of Bala's conduct, even if the conduct was not foreseeable to Patel.

▄▄▄▄ Because defendant did not object to the charge at trial, our review is for plain error. *See* Fed.R.Crim.P. 52(b). We must examine not only the specific language that defendant challenges but also "the instructions as a whole to see if the entire charge delivered a correct interpre-

tation of the law." *United States v. Carr*, 880 F.2d 1550, 1555 (2d Cir.1989) (internal quotation marks omitted).

■ After the jury finds that a conspiracy exists, it may consider whether a defendant is liable for the acts of his co-conspirators. The *Pinkerton* theory permits criminal liability of a conspirator "for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Romero*, 897 F.2d 47, 51 (2d Cir.1990) (internal quotation marks omitted). The jury must decide whether a particular substantive crime is foreseeable and in furtherance of the conspiracy. *Id.*

Patel does not argue that the facts of the case did not call for a *Pinkerton* charge, and he included one in his requested jury instructions. Instead, defendant claims that the charge Judge McAvoy read to the jury was plainly erroneous because it spoke of "the" substantive crime in its description of the first and third elements of *Pinkerton* liability and described the fifth element as requiring "that the defendant could have reasonably foreseen that *a* substantive crime might be committed by his coconspirators." Patel argues that the "instruction suffers from the very same defect" that we found plainly erroneous in *United States v. Gallerani*, 68 F.3d 611, 620 (2d Cir.1995).

Patel's comparison is inapt. In *Gallerani*, the district court not only referred to substantive crime in the singular but also described the first element of *Pinkerton* liability as "that *one* of the crimes charged in the substantive counts was committed." *Id.* (emphasis in original). We concluded that the instruction permitted the jury to find a defendant guilty of numerous alleged substantive offenses as long as his co-conspirator committed just one of them. *Id.* The charge that Judge McAvoy read did not permit that inference and made no error in describing the first element, which

was critical to the decision in *Gallerani*. The district court described the first element as "that the crime charged in the substantive counts were committed," which is exactly the wording defendant requested. In fact, the only variance between the district court's instruction on the *Pinkerton* elements and the charge Patel requested is the use of the article "a" instead of "the" in the fifth element. Thus, defendant's challenge to the jury instruction is without merit.

## C. Venue for counts 4 and 5

Finally, Patel argues that the government failed to prove that venue was proper in the Northern District of New York with respect to counts 4 and 5. Counts 4 and 5 were substantive money laundering charges regarding transactions that took place in Buffalo and Manhattan, respectively. The government responds that Patel waived his challenge to venue because he raised no argument during pre-trial proceedings or in his post-trial motion.

■ Venue is proper in any district in which defendant committed the crime, and the government must prove venue by a preponderance of the evidence. *See United States v. Naranjo*, 14 F.3d 145, 146–47 (2d Cir.1994). Venue is not proper in a district where defendant "performed only acts that preceded the inception of the offense," or in other words, were preparatory acts. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir.1989). We have held that defendant's "[o]bjections to venue are waived unless 'specifically articulated' in defense counsel's motion for acquittal." *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir.1984); *see also United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980). In *Potamitis*, defense counsel's cross-examination regarding venue and request for a venue jury instruction were insufficient to prevent waiver and merely showed counsel's "intention to put the Government

to its proof on the issue." *Potamitis,* 739 F.2d at 791.

◼ With this precedent in mind, we hold that Patel waived his venue challenge in district court. Patel did not raise the issue in his Rule 29 motion for a judgment of acquittal. At the conclusion of the jury instructions, defense counsel requested and received an instruction from the district court that Buffalo was in the Western District of New York and Manhattan was in the Southern District of New York. Counsel's actions showed at best an intention to put the government to its proof on the issue rather than a specifically articulated objection. On appeal, Patel essentially concedes his waiver and asks that we nonetheless address the merits of his claim because "it is plain that the government could not have cured the venue defect if an objection had been lodged below" and "a finding of waiver would advance no sound juridicial (sic) policy." We do not find the situation so plain because counts 4 and 5 charged Patel with aiding and abetting Bala in money laundering and there was proof that Patel committed acts in the Northern District, such as arranging meetings, escorting Bala, and bringing funds back from Manhattan, that may have been more than preparatory. Because Patel never articulated an objection to venue on this point, the record below is not developed fully, and we see no injustice in holding Patel accountable for his waiver.

## CONCLUSION

We have considered defendant's remaining arguments and find them to be without merit. For the forgoing reasons, we affirm Patel's conviction and sentence in all respects.