DENNIS JACOBS, Chief Judge,
concurring in part and dissenting in part:
I concur as to the affirmance of the convictions of David Williams, Onta Williams, and Laguerre Payen, and I concur in the majority’s rejection of any argument premised on outrageous government misconduct, and its rejection of other defense- arguments. I respectfully dissent in part because James Cromitie was entrapped as a matter of law.
I
As to entrapment, it is common ground on this panel that the government induced Cromitie to commit the terrorist crimes charged, and that it became the government’s burden to prove beyond a reasonable doubt that Cromitie was “predisposed”- ' to commit them. See United States v. Bala, 236 F.3d 87, 94 (2d Cir.2000) (“[If] a defendant presents credible evidence of government inducement, then the prosecutor must show predisposition beyond a- reasonable doubt.”). The government had to do that by proving any of three -things: “(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused’s ready response to the inducement.” United States v. Brunshtein, 344 F.3d 91, 101-02 (2d Cir.2003) (internal quotation marks and alteration omitted). Since Cromitie had no similar criminal background, and since the government informant enlisted him only after a dogged and year-long campaign of nagging, pursuit, and temptation (with money, a business, and a Mercedes-Benz), this panel is in agreement that the government had to prove an “already formed design.”
In my view, there was no evidence of an “already formed design.” At the outset, Cromitie told of wanting to “do something to America” and “die like a martyr,” but this big talk does not amount to a design— *228 to do what? — never mind one that was “already formed.” The design here was entirely formed by the government, and fed to Cromitie. He liked it, but he didn’t form it.
II
The term “already formed design” is defined away by the majority: it is “only a rather generalized idea or intent to inflict harm on” the interests of the United States. Maj. Op. at 207. That definition of the term is more its converse because an idea or intent does not amount to a design, and one that is “generalized” is unformed; the “generalized idea” of an act is not a disposition to do it; and entrapment is the very process of mobilizing a generalized idea that otherwise would remain an idle thought. Thus the majority opinion renders entrapment untenable as a defense. Unsurprisingly, the majority’s definition is incompatible with precedent.
“Formed design” is one of the three ways that the government may prove predisposition, as set out in United States v. Becker, 62 F.2d 1007, 1008 (2d Cir.1933) (Hand, J.): “an existing course of similar criminal conduct; the accused’s already formed design to commit the crime or similar crimes; [and] his willingness to do so, as evidenced by ready complaisance.” Id. at 1008. The same short catalog was repeated in somewhat different words in United States v. Sherman, 200 F.2d 880, 882 (2d Cir.1952) (Hand, J.): “The proof of [predisposition] may be by evidence of his past offences, of his preparation, even of his ready compliance.”[1] Id. (emphasis added) (internal quotation marks omitted). So an “already formed design” is one sufficiently advanced that (before government solicitation) the defendant had already “prepar[ed]” to do the crime. Entertaining a “generalized idea” of a crime is several critical steps removed from preparing to commit it. A design that is “already formed” has taken shape, and assumed parameters even if particulars remain open. A design already formed is not (as here) inchoate, undirected, and open to suggestion and revision in every respect.
The term “already formed design” takes meaning from its company, appearing in a series of three related ways to show predisposition: commission of the offense in the past, the ready willingness to do it then and there, or a formed design, which looks to the future. Existence of a formed design matters only if it cannot be shown that the defendant had already done analogous acts or had given ready assent. The three can operate as alternatives only if they are understood to be of comparable predictive force. There is great predictive force in a showing of past criminal acts along the same lines. Similarly, a ready acceptance bespeaks a complete absence of qualm or inhibition, and likewise shows that the defendant’s will and disposition did not run counter to the act and did not need to be overcome.
The predictive force of a formed design is sufficient on its own only if a course of *229 conduct is already so well advanced in the defendant’s mind that one can be sure (beyond a reasonable doubt) it was not planted by an agent provocateur. Perhaps this is why we have never before found sufficient evidence to prove that the accused had an already formed design without there also being sufficient evidence of a relevant criminal history or of ready assent to the government’s proposal. Cf., e.g., United States v. Valencia, 645 F.2d 1158, 1167 (2d Cir.1980) (“All of this evidence [of the defendants’ prior criminal conduct] could support a jury finding either that the [defendants] had been engaged in a similar ‘course of criminal conduct,’ or had already formed the design to sell cocaine and were merely looking for a buyer.”).
It therefore is not enough to infer a formed design to commit an act of terror from a sense of grievance or an impulse to lash out. These disquiets are common, and in most people will never combust.
Ill
With this in mind, there is scarce evidence of any “already formed design” on the part of Cromitie. As the majority opinion explains, evidence of predisposition must be independent of the government’s inducement. See Jacobson v. United States, 503 U.S. 540, 550, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). Cromitie’s statements at his initial meeting with Hussain therefore would be probative only if they showed Cromitie’s thinking prior to inducement. And I agree that Jacobson allows consideration of certain acts or statements that follow government inducement. See United States v. Brand, 467 F.3d 179, 192 (2d Cir.2006). Thus statements that Cromitie made long after the inducement process began might show predisposition, but only if they refer back to Cromitie’s state of mind prior to inducement or if they tend to show that Cromitie came up with the criminal design on his own. Cromitie’s statement that he had been thinking about attacking America “since [he] was [seven]” is a backwardlooking statement, but it is well short of a formed design, and shows only that any such ideation was permanently postponed.[2] Likewise, Cromitie’s statement that he was the one who first approached Hussain the day they met also refers back to Cromitie’s state of mind prior to the inducement. But it proves nothing about any “design” Cromitie might have had; it might perhaps bear on whether there was inducement, except that it is common ground that inducement was offered.
The majority opinion relies heavily and passim on post-inducement acts and statements that do not reflect the defendant’s state of mind before the initial'inducement, and therefore do not bear on predisposition. See Jacobson, 503 U.S. at 551-52, 112 S.Ct. 1535. Cromitie did what he was induced to do, and seemed happy doing it, but that cannot suffice; otherwise the induced act would always evidence the predisposition to do it. All of Cromitie’s statements listed in the majority’s opinion, Maj. Op. at 212-13, regarding specifics of the attack — such as targets — were made in direct response to Hussain’s badgering Cromitie to form a design or make a plan. For example, Cromitie’s statement about “hit[ting] the bridge” was a direct response to Hussain’s asking “[w]hat is the, what, I mean, in your mind, were your best targets here? In New York?” And Cromitie’s statement about “get[ting] a synagogue” occurred later in that same conversation and context. These statements, which occurred months after the first meeting in June 2008, cannot be used *230 to prove predisposition under Jacobson. Hussain’s industrious labor to convince Cromitie to join a terrorist plot — including Hussain’s exploitation of Cromitie’s “love” of and respect for Hussain and Hussain’s offers of large sums of money to the impoverished Cromitie — colors these statements, along with many others cited by the majority[3]; they show the government’s successful inducement, not Cromitie’s predisposition.
No reasonable jury weighing only the evidence of predisposition admissible under Jacobson could conclude that Cromitie had an “already formed design” to commit an act of terror. Wanting to “die like a martyr” and “do something to America” is not a formed design, and certainly not “preparation,” Sherman, 200 F.2d at 882. These are wishes, not designs. One amounts to no more than the boastful piety of a foolish man; the other could be banter in any faculty lounge.
It is clear that Cromitie in his unmolested state of grievance would (for all the evidence shows, and as the district court found) have continued to stew in his rage and ignorance indefinitely, and had no formed design about what to do. The government agent supplied a design and gave it form, so that the agent rather than the defendant inspired the crime, provoked it, planned it, financed it, equipped it, and furnished the time and targets. He had to, because Cromitie was comically incompetent, possibly the last candidate one would pick as the agent of a conspiracy.[4] There simply was no evidence of predisposition under our settled definition of that term.
I would therefore reverse Cromitie’s conviction as the product of entrapment. At the same time, I agree with the majority that the other defendants were not entrapped, and I therefore concur in the affirmance of their convictions.[5]

. As the majority points out, Sherman used the word "prepared” as well as the word "preparation”; the majority argues that (given the common root of the words) Judge Hand meant "prepared” in the same sense as he meant "preparation” a few lines later. The two words are used in different senses, to suit distinct contexts. The first, as the majority explains, conveys "the sense of being ready to commit the offense once the opportunity is presented,” Maj. Op. at 207, which bears on whether Cromitie was "ready and willing”; but proof of being "ready and willing” requires a showing (beyond a reasonable doubt) of similar prior acts, quick acceptance, or "preparation” in the sense of an “already formed design.” The majority opinion thus conflates predisposition ("ready and willing") with a way of proving predisposition (an "already formed design”).

. When I was 'seven, I wanted to be a fireman.

. For instance, Cromitie’s statement regarding Allah giving him his "own will,” and "if I'm doing something, it’s because I wanted to do that for so long,” Maj. Op. at 213, were made during a long conversation in February 2009, months after Hussain’s concerted inducement had begun. During that same conversation, Hussain pushed Cromitie to scout targets and recruit other members from the mosque.

. En route to the terror site, the government agent directed Cromitie to assemble the bombs; but he couldn't figure it out, and had to be shown how to do it. At the site, the government agent directed him to hide the bombs in the trunk of the car; but he couldn't get the trunk open, so he put them in the back seat. The government agent then directed him to arm the bombs, but as they drove away from the supposed car-bomb parked in front of the synagogue, Cromitie exclaimed “holy s* * *, I forgot to turn it on.”
The majority opinion argues that competence is not a consideration in the entrapment defense. I agree, up to a point; but Cromitie's bumbling compelled the exasperated government agent to treat him as a puppet. Certainly, it shows how little danger Cromitie posed to the community.

.As the majority points out, the district court has conscientiously demonstrated with telling circumstantial evidence that each defendant (other that Cromitie) readily responded to Cromitie’s offer to join the plot. I would affirm based on the district court’s reasoning.