19-3834-cr
*United States v. Khan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-one.

PRESENT:    Robert D. Sack,
                    Steven J. Menashi,
                                *Circuit Judges*,
                    Lewis A. Kaplan,
                                *Judge.*[1]

_____

United States,

            *Appellee*,

        v.                                                             No. 19-3834

Shahbaz Khan,

            *Defendant-Appellant*,

_____

_____

[1] Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

*For Appellee*:                                Jason A. Richman, Rebekah Donaleski, and Anna M. Skotko, Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*:                Randall D. Unger, Kew Gardens, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

On May 31, 2018, Defendant-Appellant Shahbaz Khan pleaded guilty, without the benefit of a plea agreement, to the two-count superseding indictment charging him with conspiracy to import narcotics to the United States and attempted narcotics importation in violation of 21 U.S.C. §§ 812, 952, 959, 960, and 963, and 18 U.S.C. § 3238. Khan appeals the sentence imposed on November 5, 2019, by the United States District Court for the Southern District of New York, of 180 months' imprisonment to be followed by a five-year term of supervised release. He argues that the sentence is procedurally unreasonable because the district court failed to consider Khan's imperfect entrapment argument and that

2

his below-guidelines sentence of 15 years' imprisonment is substantively unreasonable. We disagree and affirm. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

**BACKGROUND**

**A**

In mid-2016, the Drug Enforcement Administration ("DEA") opened an investigation into Defendant-Appellant Shahbaz Khan. Khan met with confidential sources working for the DEA who posed as drug traffickers seeking a new heroin supplier for a purported New York-based customer, who in fact was an undercover DEA officer. At their first meeting in August 2016, which was recorded, Khan told the confidential sources about his experience as an international narcotics trafficker, which included supplying more than 114 tons of drugs in one year, including 64 tons of hashish and 50 tons of "baeest" (a Pashtu slang word for either heroin or morphine, a heroin precursor). Khan told them that he had a drug trafficking system "that would have functioned for the next twenty years" had it not been disrupted when Khan and his former drug-trafficking partner were arrested, and Khan was imprisoned for seven years. Khan communicated that he was eager to resume his business. Later that month, Khan

spoke with the undercover officer, who introduced himself as a New York-based customer. He asked Khan to assist in a money transfer of $100,000 from Australia to New York, and they made plans to meet and discuss their heroin trafficking scheme.

In September 2016, Khan met with the undercover officer and confidential sources again. During these meetings, which were recorded, Khan agreed to supply large quantities of heroin in maritime shipping containers from Pakistan to New York. Khan discussed his methods to distribute large quantities of heroin without detection. Khan was confident that he could ship narcotics "wherever you give me an address[.] If you tell me America, I will send it to America."

Khan further discussed the average cost of a kilogram of heroin in New York City, and estimated profits of tens of thousands of dollars per kilogram. As proof of the quality of his heroin supply, Khan agreed to sell a five-kilogram sample of heroin for $4,000 per kilogram, which the undercover operative would then be responsible for transporting from Kabul, Afghanistan, to New York. In October 2016, Khan, his drug courier, and the confidential sources met in Kabul and exchanged five kilograms of heroin for the agreed upon payment of $4,000 per kilogram.

In November 2016, Khan and one of his sons traveled to Nairobi, Kenya, to meet with the undercover officer to further discuss the logistics of their international heroin trafficking scheme. From there, the undercover officer and Khan traveled together to Liberia. As they traveled to Liberia, Khan told the officer that they could ship up to 10,000 kilograms of heroin at a time; that with 10,000 kilograms of heroin, "you can even pay off the president" of Pakistan; and that Pakistani police would assist in the scheme by transporting heroin to the ports for shipment. When they landed in Liberia on December 1, 2016, the local authorities arrested Khan, and the DEA took him into custody and transported him to the United States soon thereafter.

**B**

On May 14, 2018, a superseding indictment charged Khan in two counts for conspiracy to import narcotics to the United States and importing narcotics in violation of 21 U.S.C. §§ 812, 952, 959, 960, and 963. On May 31, 2018, without the benefit of a plea agreement, Khan pleaded guilty to both counts of the superseding indictment.

Khan was sentenced on November 5, 2019. The district court began the sentencing hearing by resolving certain disputes regarding the sentencing

5

guideline calculations that the parties had raised in their sentencing submissions. As relevant here, the district court rejected Khan's imperfect entrapment argument and denied his request to depart or vary from the guideline sentence on that basis. However, the district court noted that "in assessing the nature and circumstances of the offense, [it was] considering that the US government agents proposed the quantities, the drug, and the ultimate destination, which made up important aspects of the conspiracy." App'x 224.

After the district court ruled on these disputes, both parties affirmed that there were no further objections to the district court's sentencing guidelines calculations. Khan faced a guidelines range of 292 to 365 months' imprisonment.

The district court concluded that Khan's offense conduct, even without considering his prior arrest history, was "incredibly serious" given the "huge quantities of heroin" and the impact of heroin on society. App'x 239. The district court also noted that deterring Khan and other drug kingpins from importing large amounts of drugs to the United States weighed in favor of a serious sentence but that "10 years in prison is itself a very serious sentence and no less so for a man who is 71 years old." App'x 240. The district court observed that Khan was assessed to be in relatively good health given his age. Finally, the district court

explained that it was not sentencing Khan for his prior drug trafficking activity but noted that:

> [T]his was not something that first occurred to you when you were approached by the agents. It was not something that was foreign to you. And in fact, you boasted about your prior drug trafficking, and whether or not there was some element of puffery in it, it's clear that you were an experienced drug trafficker and that's what you were prepared to do in this case.

App'x 241. Noting his advanced age, and that a guidelines sentence would effectively be a life sentence, the district court sentenced Khan principally to a below-guidelines term of 180 months' imprisonment to be followed by a five-year term of supervised release. Khan timely appealed.

## DISCUSSION

Khan argues that (1) his sentence is procedurally unreasonable because the district court failed to consider Khan's imperfect entrapment argument and (2) his below-guidelines sentence of 15 years' imprisonment is substantively unreasonable. We reject both arguments.

### A

Sentencing challenges are reviewed for "reasonableness," which is "'a particularly deferential form of abuse-of-discretion review' that we apply both to

7

the procedures used to arrive at the sentence (procedural reasonableness) and to the length of the sentence (substantive reasonableness)." *United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir. 2012) (quoting *United States v. Cavera*, 550 F.3d 180, 188 n.5 (2d Cir. 2008) (en banc)).

A district court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range." *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Adequately explaining the chosen sentence is "a low threshold," *United States v. Rosa*, 957 F.3d 113, 119 (2d Cir. 2020), because "there is no requirement that the court mention the required factors, much less explain how each factor affected the court's decision," *United States v. Banks*, 464 F.3d 184, 190 (2d Cir. 2006). "The 'context and the record' may render a district court's explanation adequate even where 'the judge might have said more.'" *Rosa*, 957 F.3d at 119 (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)).

A departure from the sentencing guidelines range for imperfect entrapment is based on "conduct by the government that does not give rise to an entrapment defense but that is nonetheless 'aggressive encouragement of wrongdoing.'" *United States v. Bala*, 236 F.3d 87, 92 (2d Cir. 2000). A downward departure on this ground is warranted if the district court determines that this factor "takes the case outside the heartland of the applicable Guideline." *Id.* (quoting *Koon v. United States*, 518 U.S. 81, 109 (1996)).

Khan argues that his sentence was procedurally unreasonable because the district court "failed to adequately consider or rule on" his claim of imperfect entrapment as either a basis for a downward departure or a mitigating factor under § 3553(a). Appellant's Br. 12. The record at sentencing contradicts his argument. The district court expressly considered the imperfect entrapment argument and declined to use it as a basis for a downward departure. App'x 224. The district court acknowledged that it would consider, "in assessing the nature and circumstances of the offense ... that the US government agents proposed the quantities, the drug, and the ultimate destination, which made up important aspects of the conspiracy." *Id.*

In its statement of reasons, moreover, the district court again addressed the imperfect entrapment argument, noting that drug trafficking was "not something that first occurred to [Khan] when [he was] approached by the agents." App'x 241. The district court observed that drug trafficking was not "foreign" to Khan and that he had "boasted" about his prior drug trafficking experience to the undercover agent and confidential sources. *Id.* The district court concluded that it was "clear" that Khan was an "experienced drug trafficker" and was prepared to apply his experience to effectuate the scheme. *Id.*

In sum, the district court considered and rejected Khan's imperfect entrapment argument and therefore did not err procedurally under any standard of review.[2]

**B**

Next, Khan argues that his sentence was substantively unreasonable because the district court failed to consider, under the § 3553(a) factors, (1) that his

---

[2] The government seems to argue that the procedural reasonableness of the sentence should be reviewed for plain error because defense counsel answered in the negative when asked by the court if there were any further objection to its guidelines calculation before proceeding to sentencing. *See* App'x 224. Khan argues that this court reviews for reasonableness. Appellant's Br. at 11-12. In any event, the district court did not procedurally err under either an abuse of discretion or a plain error standard.

10

statements asserting that he could deliver hundreds of kilograms of heroin were puffery; (2) his age and medical history; and (3) that he would be exposed to Covid-19 in prison. "[O]ur review of a sentence for substantive reasonableness is particularly deferential." *Broxmeyer*, 699 F.3d at 289. This "deference derives from a respect for [the district court's] distinct institutional advantages" including its "unique factfinding position, which allows it to hear evidence, make credibility determinations, and interact directly with the defendant …, thereby gaining insights not always conveyed by a cold record." *Id.*

Bearing these advantages in mind, "if the ultimate sentence is reasonable and the sentencing judge did not commit procedural error in imposing that sentence, we will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States v. Pope*, 554 F.3d 240, 246-47 (2d Cir. 2009) (alteration omitted). We therefore "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). Because "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad

11

range of sentences that would be reasonable in the particular circumstances," it is "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011).

Khan's below-guidelines sentence was well within the range of permissible decisions, taking into account the seriousness of his conduct as well as his personal circumstances. The district court considered and rejected Khan's argument that his statements about the extent of his distribution capabilities were mere puffery. In rejecting his argument, the district court noted that trafficking drugs was not foreign to Khan because he had boasted about his prior drug trafficking activities; by his own admission, he was incarcerated for drug trafficking for seven years in Dubai on prior drug trafficking charges; he had been added to OFAC's list of "specially designated" narcotics traffickers; and he had been able to procure high-quality heroin in a war-torn country on short notice. The district court concluded that "whether or not there was some element of puffery in it, it's clear that [he was] an experienced drug trafficker and that's what [he was] prepared to do in this case." App'x 241.

Second, contrary to Khan's argument, the district court took Khan's age and medical history into account. The district court noted that even the mandatory

minimum sentence of 10 years' imprisonment was "itself a very serious sentence and no less so for a man who is 71 years old"; that his age was "a significant mitigating circumstance," as was "the fact that he is in a foreign country with a limited ability to communicate in English"; and that Khan was assessed to be in "relative[ly] good health." App'x 240-41, 243. Moreover, his argument that the district court did not consider his risk of contracting Covid-19 in prison at sentencing fails because it would have been impossible for the district court to consider a concern that had not yet arisen when Khan was sentenced.

Because the district court carefully considered the § 3553(a) factors in imposing Khan's sentence, Khan has no basis to argue that his below-guidelines sentence was "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

\*     \*     \*

We have considered Khan's remaining arguments, which we conclude are without merit. For the aforementioned reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13